R. L. SWEARER CO. *v.* UNITED STATES

No. 5884.—Invoices dated Hanley, England, February 17, 1941, etc.
Certified February 18, 1941, etc.
Entered at Pittsburgh, Pa., March 27, 1941, etc.
Entry No. 365, etc.

(Order dated June 16, 1943)

*Jerome G. Clifford* (*Jerome G. Clifford* and *George W. Israel* of counsel) for the plaintiff.

*Paul P. Rao,* Assistant Attorney General (*Richard F. Weeks* and *Daniel I. Auster,* special attorneys), for the defendant.

## ORDER

WALKER, Judge: These are appeals to reappraisement involving so-called duress entries in connection with which a certificate was filed under the provisions of section 503 (b) of the Tariff Act of 1930 stating that the merchandise was entered at higher values than the dutiable values because of advances made by the appraiser in a similar case then pending on appeal to reappraisement, the said test case being Pittsburgh Entry No. 263 of November 4, 1939, Reappraisement No. 138002–A. That case was decided on March 13, 1942 (*R. L. Swearer et al.* v. *United States,* Reap. Dec. 5598), and the record therein was, on motion of counsel for the plaintiff which was not objected to on the part of the defendant, incorporated and made a part of the record in this case.

The merchandise involved consists of potters' gold colors exported from England between October 24, 1940, and January 26, 1942. The merchandise was appraised on the basis of United States value (sec. 402 (e), Tariff Act of 1930). No attempt is made by the importer to contradict the actual values found on such basis by the appraiser, it being the plaintiff's contention that the proper basis of value for the merchandise is the foreign value as defined in section 402 (c) of the said act. Since the importer herein is the foreign manufacturer's sole agent and exclusive American purchaser both parties apparently agree that there was no export value for the goods as defined in section 402 (d).

In addition to the incorporated record, the record before me consists of a so-called affidavit which purports on its face to have been executed by one Sidney T. Harrison of Stoke-on-Trent, England and to have been sworn to before one J. W. Moxon, who styles himself "A Commissioner for Oaths."

At the time so-called affidavit was offered in evidence by counsel for the plaintiff, counsel for the defendant asked leave to reserve any objections he might have for the brief, and with that understanding the so-called affidavit was admitted as collective exhibit 1, together with some 59 invoices which are referred to therein.

It may be stated at this point that a document executed in a manner identical with that of exhibit 1 herein was offered in evidence as exhibit 1 at the trial of the incorporated case. At that time objection was made thereto on the ground that it consisted "of conclusions of law as immaterial, irrelevant, and incompetent" and leave was asked

to file further objections in a brief. The objections made at the time of offer were overruled by the trial judge, and the leave asked was granted, but no further objections as to the document itself were made. In the course of his decision, which was in plaintiff's favor, the affidavit was considered by the court, as appears by the opinion, and evidently played considerable part in the ultimate conclusion reached.

In the brief filed on behalf of the defendant in the cases before me it is contended that both exhibit 1 in the instant case and exhibit 1 in the incorporated case are not admissible for the reason that they lack any certification as to the authority of J. W. Moxon to take the affidavit of the affiant.

In the reply brief filed on behalf of the plaintiff it is pointed out that as to exhibit 1 in the incorporated case only the general objection to its materiality, relevancy, and competency was taken, and *Noonan* v. *Caledonia Mining Co.*, 121 U. S. 393, is cited, among other cases, for the proposition that such a general objection is insufficient to cover the specific defect of lack of authentication charged in defendant's brief.

In exhibit 1 in the instant case I observe the following paragraph:

2. This will supplement affidavit sworn to by me on April 18, 1941, at Hanley in the City of Stoke-on-Trent, England, before J. W. Moxon, a Commissioner for Oaths, which affidavit, together with the fifty-five invoices attached thereto and made a part thereof I hereby make a part of this affidavit with the same force and effect as if herein fully set forth.

It is my view that the two documents, although offered separately, are, for the purposes of this case, one, and while it is true that perhaps as to certain items here involved exhibit 1 in the incorporated case may have some bearing standing alone, in view of the conclusion I have reached, and which is set forth, *infra*, I believe no injustice or unnecessary hardship will be imposed upon the plaintiff by reason of their being so considered.

The portion of section 501 of the Tariff Act of 1930 pertinent to the matter of the admission in evidence of affidavits reads as follows:

* * *. In finding such value affidavits and depositions of persons whose attendance can not reasonably be had, price lists and catalogues, reports or depositions of consuls, customs agents, collectors, appraisers, assistant appraisers, examiners, and other officers of the Government may be admitted in evidence. * * *.

The rule of this court on the subject is as follows:

25. HEARINGS IN REAPPRAISEMENTS.

\* \* \* \* \* \* \*

At the hearing of appeals for reappraisement affidavits of persons whose attendance cannot reasonably be had, reports of special agents, and other United States officials discharging their duties in investigating market conditions, shall, when admitted in evidence, be considered and accorded such credence and probative force as, in the opinion of the judge, the circumstances may justify.

From the foregoing it will be seen that there is no statutory provision or rule of the court expressly requiring authentication of affidavits offered thereunder. The general rule in such cases is stated in 2 C. J. S. Affidavits Sec. 22 b. (1) as follows:

\* \* \* \* \* \* \*

As a general rule, in the absence of statutory provision or rule of court, an affidavit taken outside the state cannot be received in court as an affidavit until it is shown that the person before whom it was taken was an officer authorized to perform such act; \* \* \*.

Some conflict as to the application of this rule to notaries public appears to exist, some courts applying the general rule to affidavits taken by foreign notaries while others reach a contrary result, but the variance is not material here since the officer before whom the affiant's oath purports to have been taken in the case of the documents at bar is not styled as a notary but as a "Commissioner for Oaths."

In the case of *Textile Looms, Inc.* v. *United States,* Reap. Dec. 4025, the question was considered, among others. There a paper designated by counsel for the plaintiff as an affidavit was offered in evidence, and is thus described by the court:

\* \* \*. I have carefully examined said exhibit 2 and it *seems* to be a declaration signed by the said J. G. Nef in the presence of Dr. E. Schiess, State Chancellor of the Canton of Appenzell, A. Rh., Confederation of Switzerland, and attached to it is a certificate executed by Eugene W. Nabel, vice consul of the United States of America at Zurich, Switzerland, stating that said Dr. E. Schiess is the State Chancellor of the Canton of Appenzell, A. Rh., Confederation of Switzerland, and is duly commissioned and qualified, and to whose official acts faith and credit are due. [Italics quoted.]

Objection was made to the admission of the paper in evidence on the ground that it was not an affidavit, and therefore did not comply with the provisions of section 501 of the Tariff Act of 1930. In disposing of the matter the court said:

\* \* \*. This alleged certificate of the said Dr. E. Schiess is evidently not a jurat but seems to be an attestation of the signature of the said J. G. Nef by him. There is no proof in the record nor does said exhibit show that this exhibit was sworn to by the said J. G. Nef or that the said Dr. E. Schiess had the authority to administer an oath, and if so, whether he administered same to the said J. G. Nef.

Bouvier's Law Dictionary, Vol. 1, page 158, 8th edition, defines an affidavit as follows:

A statement or declaration reduced to writing, and sworn to or affirmed before some officer who had *authority* to administer an oath or affirmation. [Italics mine.]

Black's Law Dictionary defines an affidavit as—

A written or printed declaration or statement of facts, made voluntarily, and confirmed by the oath or affirmation of the party making it, taken before an officer having *authority* to administer such oath. [Italics mine.]

Exhibit 2, in my judgment, is not an affidavit within the purview of section 501, Tariff Act of 1930, as there is no evidence in this record to show that this exhibit was sworn to by said J. G. Nef before the said Dr. E. Schiess, or that the

said Dr. E. Schiess is an officer who has authority to administer an oath. Neither does the certificate of the said vice consul say that he had such authority. I therefore hold that said exhibit 2 is of no probative value in this case. Exception to this ruling is hereby given to the attorney for the plaintiff.

It will be observed in the foregoing case that the document was treated as a nullity for two reasons: First, there was no evidence that the statements had been made under oath, and, second, there was nothing to show that the person before whom the statements were made had authority to administer an oath. Apparently, the result would have been the same on either ground alone.

A contrary result was reached, however, in the case of *Sanders Mfg. Co.* v. *United States*, Reap. Dec. 5044. There certain documents in the form of affidavits were offered, and the court, in its opinion disposing of the issue, said:

> Counsel for the defendant objected to these affidavits on the ground that they were not in proper form, were unauthenticated documents having no consular certificate attached thereto, and having no certificate of any court of record to show that the person who purports to be a notary is authorized under the law to take signatures on such instruments. The objection was taken under advisement and the affidavits were marked "Exhibits A and B for Identification."
>
> Counsel for the plaintiff points out that the exhibits begin with the statement "Affiant states under oath" and "Affiant makes oath," respectively, and that the exhibits show on their face that they were executed under oath and that they contain the seal of the notary showing his official status.
>
> There appears to be no set form for an affidavit admissible under the authority of section 501 of the Tariff Act of 1930, citing *Amtorg Trading Corp.* v. *United States*, 21 C. C. P. A. 532, T. D. 46975, and there is no requirement that an affidavit be executed before a United States official, such as consul, etc. The defect found in the affidavits by the appellate division has been cured by the translation of the jurats in open court.
>
> The witness testified that he had been a resident of Germany until the year 1923 and that his two brothers were lawyers and that he knew the statements on the back of the affidavits were the official way by which affidavits were attested in Germany. The fact that they are still attested the same way would seem to indicate that the method had not changed. The affidavits are received in evidence as exhibits 3 and 4, which marks they bear, and exception is granted counsel for the Government.

In my view the holding in the *Textile Looms* case, being in accord with the general rule, is the more persuasive of the two rules above set forth. Furthermore, I am of the opinion that the *Amtorg* case is not authority for the conclusion reached in the *Sanders* case. In the *Amtorg* case, certain documents offered in evidence on behalf of the plaintiff therein as affidavits were objected to by defendant's counsel on the ground that they were not sworn to, and were not affidavits in form. The trial court admitted the documents in evidence, but on review the Division held that the documents were not, in fact, affidavits, and had not properly been received in evidence since they had not been made upon oath. This holding of the Division was assigned

as error on appeal to the Court of Customs and Patent Appeals, and in disposing of it the court said:

Section 501 of the Tariff Act of 1922 provides in part, when outlining the procedure before the single general appraiser, now judge of the United States Customs Court: "In finding such value affidavits of persons whose attendance cannot reasonably be had * * * may be considered."

No meaning other than the ordinary one is here imputed to the word "affidavit." What, then, in its ordinary signification, is an affidavit? Black's Law Dictionary (3d Ed.), 73, thus defines it:

A written or printed declaration or statement of facts, made voluntarily, and confirmed by the oath or affirmation of the party making it, taken before an officer having authority to administer such oath.

Confirming this definition are Words & Phrases (1st ed.), Vol. 1, p. 240; Bouvier's Law Dict. (1897). Vol. 1, p. 111; Corpus Juris, Vol. 2, p. 317; Webster's New International Dictionary (1932).

That an affirmation is equivalent to an oath is well settled. The Constitution makes it such in the oath of the President, Article II, section 1; when the Senate tries impeachments, Article 1, section 3; and in the oaths of State and United States officers, Article VI.

Section 1, Title 1, Revised Statutes, provides: "A requirement of an 'oath' shall be deemed complied with by making affirmation in judicial form."

There is no specific form in which an affidavit must be drawn, under this statute. *The certificates attached show that the statements here in question were taken before officers having authority, under the laws of the Soviet Government, to take them.* They were, therefore, admissible and should have been considered by the court. [Italics mine.]

As I see it, no inconsiderable portion of the court's ruling was the result of the fact brought out in the italicized sentence.

In view of the obvious difficulties of obtaining proof in the prosecution of appeals to reappraisement, where the only competent evidence may be the statements of persons located at a distance from the court or outside its jurisdiction, Congress relaxed the ordinary rules of evidence to permit the introduction of statements in the form of affidavits, reports, etc., of persons who have not submitted themselves to the jurisdiction of the court and who cannot be cross-examined thereon. It is my conviction that, so far as section 501 refers to affidavits, at least, it was never intended, by the elimination of the necessity for personal appearance and subjection to cross-examination, which, after all, are the chief safeguards by which testimonial assertions may be tested, to relax the rule to a point whereby no chain of evidence would be required to establish that the statements were, in fact, made under oath applied by an officer having authority so to do or by affirmation before such officer.

In the documents before me one J. W. Moxon signed the jurat as a "Commissioner for Oaths." It cannot be denied that the statements made by Sidney T. Harrison in the documents have no force whatsoever unless sworn to before competent authority. In view of the very important safeguards which have been eliminated in the

case of affidavits in this court, I believe that the authority of J. W. Moxon must be shown before I may consider Mr. Harrison's statements as evidence.

It will be noted that the objection to the admission of the documents in question was made for the first time in the brief filed on behalf of the defendant, this under leave granted at the time of trial to file further objections. In view of this fact, and in order that there may be no element of injustice by reason of the fact that past opinion on the subject appears to have been somewhat divided, I order the cases restored to my October 1943 calendar at the port of New York, where counsel for both parties have their offices, at which time counsel for the plaintiff may submit properly authenticated affidavits, or take such action as he deems proper under the circumstances.