John Stahl v. The State of Kansas, *ex rel. Ella Lorimer.*

No. 13,312.    (74 Pac. 238.)

Error from Brown district court; William I. Stuart, judge.    Opinion filed November 7, 1903.    Affirmed.

James Falloon, and Sample F. Newlon, for plaintiff in error.

W. F. Means, county attorney, Ryan & Ryan, and C. W. Reeder, for defendant in error.

*Per Curiam:* John Stahl was the respondent in a bastardy proceeding wherein Ella Lorimer was the relatrix. Upon the trial he was found to be the father of the child

and adjudged to pay for its maintenance and education $2250.

In part, his defense was based upon the claim that a brother-in-law of Miss Lorimer was the father of the child. In proof of this he showed by one witness that, some nine or ten years before the birth of the child, this brother-in-law was seen in a cave, or outdoor cellar, toward which Miss Lorimer, then a girl of about sixteen years of age, was going, and which she afterward entered, in a vulgar and compromising position.    The brother-in-law had gone into the cave for the purpose of carrying the milk and Miss Lorimer was going there to take care of it.    It was not shown that anything wrong occurred between the parties after she reached the cave, or even what the brother-in-law's position was, or that there was anything wrong in the brother-in-law's conduct when she came to the cave.    It was further shown that while Miss Lorimer was living at the house of this brother-in-law she sat next to him at the table, accompanied him to various meetings in the daytime in company with his wife and child, and, on occasion, when the crowded condition of the vehicle required it, she would ride sitting on his lap.    To make these matters competent as evidence, it was further shown that this brother-in-law had stayed one night at the house of Miss Lorimer's father, she then being at home, about the time that conception of the bastard child must have taken place.    The trial court deemed the compromising acts testified to as having occurred nine or ten years prior to this too remote and indefinite to go to the jury for the purpose of raising any presumption that the brother-in-law had connection with the relatrix at the time he stayed all night at the house of her father.    We think there was no error committed by the court in this matter.    Giving the evidence its fullest effect, no wrong-doing is traced to Miss Lorimer.    If the brother-in-law was acting lewdly, it was not in her presence or shown to be with her knowledge. The other actions were of the most innocent and usual occurrence.

The second claimed error is that the court refused to require the relatrix to produce the child in court.    We need not discuss this, for subsequently the child was exhibited to the jury and their attention called thereto, and the error, if any, thereby cured.

It is next claimed that the court should have permitted evidence of the relatrix given upon the preliminary exami-

55—67 KAN.

nation to be read upon the trial, as it tended to disprove and contradict the evidence given by her upon the trial. We have carefully examined her testimony given on both occasions and find no substantial difference.

The court instructed the jury as to the usual period of gestation, and then added that in extraordinary cases this period might be shortened or lengthened. We find no error in this, as in any case the ordinary time as indicated by the court would include the time when defendant's witnesses testified that the brother-in-law stayed at his father-in-law's house.

Fault is found with the court in giving the following instruction: "The purpose of a proceeding in bastardy, such as this, is to compel the father of an illegitimate child to assist in supporting the fruits of his immoral act, and to indemnify the public against the burden of supporting the child." It is claimed that this was an invitation to the jury to convict. We see no force in this objection.

Finally, it is claimed that the amount of the judgment was oppressive and excessive. The statute directs that the court shall render such judgment as may seem just for the securing of the maintenance and education of the child. This is a matter within the sound discretion of the court. The amount should be such as to secure the maintenance and education of the child commensurate with the standing of its mother, and measured to some extent by the ability of its father. Here it was shown that the defendant had property to the value of $9000 to $12,000. The amount adjudged is but little more than $100 a year for the child's maintenance and education during minority. We are not prepared to say that this was an abuse of the court's discretion in the matter or even excessive.

The judgment will be affirmed.