STATE, APPELLANT, v. PATTON, RESPONDENT.

(No. 7,492.)

(Submitted March 4, 1936. Decided March 17, 1936.)

[55 Pac. (2d) 1290.]

52

*Mr. Raymond T. Nagle,* Attorney General, *Mr. Enor K. Matson,* Assistant Attorney General, and *Mr. Raymond Shelden,* County Attorney of Carter County, for Appellant, submitted a brief; *Mr. Sheldon* argued the cause orally.

54

*Mr. Dan McCutchen,* of the Bar of Belle Fourche, South Dakota, for Respondent, submitted a brief.

MR. JUSTICE STEWART delivered the opinion of the court.

This is a proceeding in bastardy under sections 12267 to 12274, inclusive, of the Revised Codes of 1921. The complaint, filed May 10, 1933, charged defendant, Sherman Clay Patton, with being the father of the then unborn child of prosecutrix, Lorna Drake, and prayed that he be charged with the maintenance of the child, and that he be required to pay the expenses of confinement of prosecutrix. Issue was joined by a plea of not guilty. The matter was tried by the court sitting with a jury, on June 10, 1935.

Evidence in support of the complaint was to the effect that prosecutrix was an unmarried woman 24 years of age; that she was the mother of a male child; that from May 1, 1932, until October 1, 1932, she was employed as a domestic servant at the ranch home of one U. C. Patton; that while thus employed she met defendant, the son of her employer; that on the night of September 24, 1932, she attended a public dance, attended also by defendant; that afterward she returned to the Patton home in a car with defendant; that on that occasion an act of sexual intercourse occurred between the parties, and that the act was repeated on two or three subsequent occasions; that her last menstruation preceding her pregnancy was about September 15, 1932; that her child was born June 25, 1933; that it was in all respects a normal child, gave every evidence of being of normal birth, cried lustily, and had a full growth of hair; that its finger and toe nails were fully grown; that it was fully developed and vigorous; that it nursed within a few hours after birth, and had a good appetite; that it had a strong grip in its fingers, and that to the time of the trial it had continued to live as a normal healthy child.

Evidence was adduced to show that dating from a known fruitful act of intercourse, the usual period of gestation in human beings is 272 days, and about 280 days from the cessation of the menses; that although this might vary a few days,

a baby born eight months after conception would not be a normal baby, and that the shortest period for a normal birth is about 260 days.

Defendant admitted that he had sexual intercourse with prosecutrix in the month of September, 1932. He admitted that the details of the occasion following the dance as described by prosecutrix were correct. He stated, however, that he thought it had occurred during the early part of September, instead of on September 24th, as claimed by prosecutrix. He denied that he ever indulged in intercourse with prosecutrix subsequent to that time.

Evidence was produced in defendant's behalf to show that in the first part of September, 1932, prosecutrix went with the Patton family to a fair at Camp Crook, South Dakota; that while there she and the Pattons visited at the home of defendant's brother, and that on that occasion prosecutrix met one Jerry Reishen, a young school-teacher; that she again met Reishen at the ranch home of Ed Pendleton, who was the father-in-law of defendant's brother, and that this was in October, 1932. Prosecutrix admitted meeting Reishen on these two occasions, but she claimed that the meeting at the Pendleton home occurred some time in November instead of October. She also testified that in both instances she merely met Reishen in a casual way; that she was in no way intimate with him; and that there was no opportunity for any intimacy between them on either occasion, because they were constantly in the presence of various members of the Patton and Pendleton families. This evidence is uncontroverted.

Sarah Patton, defendant's sister-in-law, together with her mother, Maud L. Pendleton, both witnesses for defendant, testified that on at least two occasions, the first of which was in November, 1932, prosecutrix had discussed her pregnancy with them; that she admitted having had intercourse with Reishen in October, 1932, and that she then stated that she did not know who was responsible, "Jerry Reishen or Sherman Patton." This was denied by prosecutrix. Other evidence ten-

dered by the defense for the purpose of showing that the prosecutrix had engaged in sexual intercourse with Reishen in the fall of 1932 was all emphatically denied by her.

The jury returned a verdict of not guilty, and judgment of dismissal was entered. Plaintiff moved for a new trial, and the motion was denied. Thereafter, an appeal was taken from the judgment. Although numerous specifications of error have been assigned, many of them are, as we view the case, unimportant and require no special consideration. The important ones involve but a few propositions.

One of the grounds urged in the motion for a new trial involves alleged improper cross-examination of prosecutrix. On direct examination she testified to acts of intimacy with defendant, and asserted that as a result thereof she had become pregnant. She made no mention of Reishen or any other man. In the course of cross-examination, defendant's counsel asked numerous questions about her meeting and association with Reishen and with one Wheat. Thus, for example, prosecutrix was asked whether she had seen Reishen at the Pendleton home one evening, without fixing the particular date or time of the occasion. She was asked whether she knew a boy named Wheat, whether she had kept company with him, and when she had last seen him. She was asked whether at the time she attended the county fair she had engaged in sexual intercourse with Reishen. She was asked whether Reishen was the first man to whom she had disclosed the fact of her pregnancy, and whether Reishen was living at Sarah Patton's place at a time when prosecutrix was working there. She was also asked the following questions: "When you were over there at Sarah Patton's place did you tell Jerry Reishen that you were pregnant? Were you present when Jerry reached in his pocket and pulled out his share of the money? Do you mean to say that did not happen? Jerry had no property or no steady job? Jerry was a school teacher, wasn't he, over at Camp Crook? and the young man, Wheat, was gone? In this letter

that you wrote Sarah, did you ask her to get some more money from Jerry and Sherman?''

These specific examples of questions exemplify in general the course pursued by defendant's counsel in his cross-examination. All of these, and many other questions of similar import, were met by strenuous objections. In some instances the objections were overruled; in others they were sustained. Even, however, where the objections were sustained, defense counsel continued undaunted to pursue the same line of questioning. Some of the questions thus propounded might possibly be said to have been proper for the purpose of laying a foundation for the impeachment of the witness. If that was the purpose, then it was incumbent upon defense counsel to submit in his case evidence which would have had the effect of impeaching prosecutrix as a witness, and negativing the testimony given by her on her cross-examination. This was not done, nor even attempted. For example, to the question, ''Were you present when Jerry reached in his pocket and pulled out his share of the money?'' prosecutrix answered in the negative. Defense counsel never made any attempt to prove that such a circumstance had actually occurred. Again, prosecutrix expressly denied that she had ever written a letter to Sarah Patton asking her ''to get some more money from Jerry and Sherman.'' This matter was never thereafter mentioned. The defense did not attempt to produce any such letter. Many instances of similar nature might be cited, but the above references are sufficient to illustrate that the questions asked on cross-examination were apparently not designed or intended to lay a foundation for impeaching prosecutrix.

Obviously, then, the only purpose sought to be achieved, and the only result that could possibly have been attained by this line of questioning was to discredit prosecutrix and besmirch her character by inference and suggestion, and thereby prejudice her in the eyes of the jury. In such circumstances it is of little importance that objections were sustained to some of the questions, or that prosecutrix answered most of them in the

negative. Manifestly it was the questions and not the answers which counsel considered important. In this connection we quote the following pertinent language approved in the case of *State* v. *Shannon,* 95 Mont. 280, 26 Pac. (2d) 360, 364: "It is quite evident that the questions and not the answers were what the prosecution thought important. The purpose of the questions clearly was to keep persistently before the jury the assumption of damaging facts which could not be proven, and thus impress upon their minds the probability of the existence of the assumed facts upon which the questions were based." The court further said: "It is interesting to observe that the prosecution did not make any attempt to prove the other criminal acts. A timely attempt to show such other acts would have disclosed a degree of good faith at least, and would have evidenced a purpose to present the matter in accordance with recognized rules of evidence." (See, also, *Vonault* v. *O'Rourke,* 97 Mont. 92, 33 Pac. (2d) 535, and cases cited in both opinions.)

If counsel for defendant was able to produce any evidence tending to prove any of the facts implied by this adroit line of cross-examination, it was incumbent upon him to do so in his own case and not prove his case by cross-examination of prosecutrix or her witnesses. "Under the pretense of cross-examination of a witness one party to an action cannot make out his case by witnesses for the other side." (*State* v. *Shannon,* supra; *Vonault* v. *O'Rourke,* supra; *State* v. *Smith,* 57 Mont. 349, 188 Pac. 644, and authorities cited.)

We are impressed by the contention that a great deal of the cross-examination of prosecutrix was unfair, improper, and prejudicial to her. Indeed, in many instances not only were the questions propounded improper, but they also verged upon the line of misconduct of counsel. A flagrant illustration of this fact is presented in the manner in which counsel for defendant referred to the man Wheat, even after he had developed the fact that prosecutrix had not seen him for at least

a year prior to the time when the child must necessarily have been conceived.

Error is predicated on the admission, over objection, of testimony by Sarah Patton and Maud Pendleton that on at least two occasions in the late fall of 1932 or in January, 1933 (the exact date being uncertain), prosecutrix had discussed with them the fact of her pregnancy, and had stated to them that she did not know who was responsible for her condition; that she admitted to them that she had indulged in sexual intercourse with Reishen some time in October, 1932, and that she did not know whether it was Reishen or defendant who was responsible for her pregnant condition. These witnesses were permitted to testify that prosecutrix had met Reishen at the Tom Patton home in the first part of September, 1932, and that she had met him again at a later date (October or November) at a family gathering at the Pendleton ranch home.

Appellant asserts that all of this testimony was inadmissible, and that the court erred in admitting it. It is argued that the testimony of the meeting between Reishen and prosecutrix at the Tom Patton home and at the Pendleton home was irrelevant, incompetent and immaterial, because the witnesses failed to specify any acts or circumstances showing acquaintance, familiarity, or opportunity for intimacy between them. Appellant also urges that the testimony of these witnesses as to acts of intercourse between prosecutrix and Reishen was inadmissible, because it tended to show that prosecutrix had engaged in intercourse with some man other than defendant, outside the period of time when the child must necessarily have been conceived.

The questions thus presented are controlled by certain well-defined principles of law in proceedings of this nature. In a bastardy proceeding it is generally held that evidence of the meeting or association of prosecutrix with other men should be limited to matters and occasions which tend to prove illicit relations between them. (*Brennan* v. *State,* 151 Md. 265, 134 Atl. 148, 48 A. L. R. 342; 7 C. J. 990, and cases cited; *State* v.

*Ginger,* 80 Iowa, 574, 46 N. W. 657; *Stahl* v. *State,* 67 Kan. 864, 74 Pac. 238; *State* v. *Ferguson,* 157 Wash. 19, 288 Pac. 239; *Mensing* v. *Croter,* 209 Cal. 318, 287 Pac. 336, 280 Pac. 1026.) In the last-cited case it was held that notwithstanding past illicit relations of prosecutrix with a man other than defendant long prior to the conception of her child, testimony of subsequent acquaintance and association with the same man at about the time her child must have been begotten, was inadmissible, unless "there existed both the desire and opportunity on the part of each for the resumption of their past illicit relationship."

It is a well-established rule that evidence with respect to the reputation of prosecutrix for chastity, either by way of general reputation or specific acts, is not admissible. (Jones on Evidence, 2d ed., p. 1226; *Davison* v. *Cruse,* 47 Neb. 829, 66 N. W. 823; Abbott on Proof of Facts, 3d ed., 320; *Rinehart* v. *State,* 23 Ind. App. 419, 55 N. E. 504.) The sole issue in such a case as this is, Who is the father of the child? Hence, the general reputation of prosecutrix for chastity is irrelevant. (Underhill on Criminal Evidence, 3d ed., sec. 803.) Evidence of relationship of prosecutrix with other men outside of the period of gestation, or outside of the period when the child must have been begotten, is inadmissible. (*In re Gird's Estate,* 157 Cal. 534, 108 Pac. 499, 137 Am. St. Rep. 131; *Dixon* v. *State,* 88 Okl. 172, 212 Pac. 600; *Mensing* v. *Croter,* supra; *State* v. *Ferguson,* supra; *Clark* v. *State,* 144 Okl. 7, 289 Pac. 313; *State* v. *Reese,* 43 Utah, 447, 135 Pac. 270. See, also, a note on this subject in 56 Am. Dec. 217.) In 3 R. C. L. 763, the general rule is stated as follows: "Evidence is admissible to show that the mother had sexual intercourse with other men at about the time the child was begotten, and the mother may be interrogated on this point, but evidence tending to show that she had illicit connection with other men, and interrogatories made with a view to elicit that fact from her, must be confined to a period when in the course of nature it would

have been possible for the child to be the result of such intercourse.''

In the light of the foregoing rules we are of the opinion that any testimony with respect to a mere meeting or association between prosecutrix and Reishen, without a showing that they were possessed of the desire and opportunity for intimacy, was inadmissible and should have been excluded. The witnesses might properly have been permitted to testify as to any admission made by prosecutrix as to acts of intercourse between herself and other men, provided such acts alleged to have been admitted by her occurred within the period of time when the child may have been begotten. (See 7 C. J. 990.) Testimony with respect to any such acts outside that particular period of time, or outside the period of gestation, was not admissible.

One John Lathom, a witness for the defendant, was permitted, over objection, to testify that some time in November or December, 1932, or in January, 1933 (he could not fix the time exactly), he was in Camp Crook, South Dakota, and that while there he was a guest at the Tom Patton home on several occasions. He stated that then prosecutrix was working at the Tom Patton home; that Reishen was boarding there; and that at that time he witnessed little acts of intimacy between prosecutrix and Reishen. Error is predicated upon the admission of this testimony, and we think justly so. Under the authorities to which we have already adverted, it is clear that testimony of these alleged acts of intimacy was inadmissible as too uncertain in time, and clearly outside the time when the child must necessarily have been begotten. Such evidence was, therefore, irrelevant and should have been excluded.

From what we have said it is manifest that many errors were committed in the admission of evidence, and in the permission of improper cross-examination. Defendant contends that if any such errors did occur, they were not of sufficient gravity to justify a reversal of the judgment. In support of this position he cites and relies upon section 9751, Revised Codes 1921, which provides in part as follows: ''And no cause

shall be reversed upon appeal by reason of any error committed by the trial court against the appellant, where the record shows that the same result would have been attained had such trial court not committed an error or errors against the respondent.''

The principle of harmless error contended for by defendant is enunciated in sections 9191 and 12125, Revised Codes, and under it, judgments are frequently left undisturbed although it appears that errors of a trivial or nonprejudicial nature may have been committed in the trial. This practice, however, has not been and cannot be extended to permit a judgment to stand where error of a prejudicial nature which tends to affect the substantial rights of one of the parties has been committed. (See *State* v. *Shannon,* supra.) As will be noted from a review of the decisions of this and other courts, such prejudicial error may occur in any one of numerous forms. Thus errors in the admission of improper evidence or in the permission of improper cross-examination have been held in and of themselves sufficiently prejudicial to justify the reversal of a judgment. (See *State* v. *Shannon,* supra; *Vonault* v. *O'Rourke,* supra; *Bennett* v. *Gusdorf,* 101 Mont. 39, 53 Pac. (2d) 91.)

There might be some merit in the position taken by defendant in this regard if, in spite of the errors committed, the judgment was nevertheless reasonably well supported by competent evidence. Appellant contends here, just it as was contended in connection with the motion for a new trial, that the evidence is insufficient to support the judgment. A careful reading of the record convinces us that there is considerable force in this assertion. It must be remembered that defendant admitted having had sexual intercourse with prosecutrix in September, 1932. The evidence demonstrates very conclusively that this occurred on September 25, right at the critical time. The evidence is also very conclusive that the child was born almost exactly nine months later June 25, 1933) ; that it was a normal child in every respect and gave every indication

of being a full-time birth; that the usual period of gestation is 272 days, or nine months, from a known act of fruitful intercourse, and that this term may vary a few days one way or the other, but that a child born eight months after conception will undoubtedly show indications of premature birth. No evidence whatever indicated that the child of prosecutrix was born prematurely. No acts of intercourse with other men were proved, either by direct or circumstantial evidence.

As against this, the only competent evidence on defendant's behalf which tends to support the judgment rendered, is the testimony of Sarah Patton and Maud Pendleton, to the effect that prosecutrix some time after she became pregnant told them that she did not know whether it was defendant or Reishen who was responsible for her condition. Sarah Patton also testified that prosecutrix had admitted to her that she had had sexual intercourse with Reishen some time in October, 1932. In the light of the authorities to which we have already referred, it is extremely doubtful whether this last item of testimony was admissible. It was indefinite as to time, and probably objectionable as not being properly within the period when the child must necessarily have been begotten. As we have pointed out, the evidence of mere meetings between prosecutrix and Reishen was not properly admissible. Prosecutrix emphatically denied ever making any such admission as that claimed by Sarah Patton and Maud Pendleton. She also denied having had intercourse with Reishen.

From this brief review and comparison of the evidence submitted by the respective parties, it is manifest that the evidence tending to support the judgment is at best extremely weak and meager. On the other hand, the evidence tending to establish the fact that defendant is the father of the child of prosecutrix is direct and quite forceful, and to us seems convincing.

If we were deciding this case solely upon the question of the sufficiency of the evidence, and if no errors were present, we might be reluctant to reverse the judgment because there is

some evidence tending to support it, however meager and unconvincing that evidence may seem to us; but, as we have heretofore noted, there were several very important errors in the course of the trial, and we are of the opinion that those errors alone might well be said to be sufficiently grave and sufficiently prejudicial to necessitate a reversal. In any event, when we consider those errors along with the fact that the competent evidence in support of the judgment is so extremely weak, we have no hesitation in holding that the judgment should be reversed.

The judgment is reversed and the cause remanded, with instruction to grant a new trial.

MR. CHIEF JUSTICE SANDS and ASSOCIATE JUSTICES MATTHEWS, ANDERSON and MORRIS concur.