Mrs. Pearl A. WANAMAKER, Plaintiff,

v.

Fulton LEWIS, Jr., WWDC, Inc., a corporation
and
Mutual Broadcasting System, Inc., a corporation, Defendants.

Civ. A. No. 1–57.

United States District Court
District of Columbia.

May 6, 1959.

J. P. Tonkoff, Yakima, Wash., Warren Miller and Earl Davis, Washington, D. C., of counsel, for plaintiff.

Roger Robb, Kenneth W. Parkinson, and Edwin R. Schneider, Washington, D. C., for defendants.

1. Baker v. Texas & Pacific Railway Co., 359 U.S. 227, 79 S.Ct. 664, 3 L.Ed. 756.

HART, District Judge.

In this action for libel the jury rendered a verdict for the plaintiff. The defendants move for a new trial on the ground that the verdict was excessive and on the further ground that the cross-examination of one of defendants' witnesses by counsel for the plaintiff was prejudicial to the defendants. In their written motion for a new trial the defendants advanced eleven other grounds for the granting of the motion for a new trial, but these eleven grounds were not argued by counsel for defendants in the oral argument on the motion and will not be considered by the Court.

On January 6, 1956, the defendant, Fulton Lewis, Jr., made a radio broadcast over the facilities of the defendant, The Mutual Broadcasting System, Inc., which broadcasting system consisted of some 500 radio stations throughout the United States, including Station WWDC which is owned by WWDC, Inc., another of the defendants in this action. Station WWDC broadcasts in the Metropolitan Area of Washington, D. C.

In this broadcast of January 6, 1956, defendant, Lewis, criticized the White House Conference on Education and plaintiff's part therein. Defendant, Lewis, also criticized plaintiff's handling of an appeal which came before plaintiff, in her capacity as Superintendent of Public Instruction in the State of Washington, concerning a teacher in Washington State who had invoked the Fifth Amendment before the House Un-American Activities Committee when the teacher was questioned about Communist activities. Defendant, Lewis, further stated that plaintiff had a brother who had been in the State Department, and who fled behind the Iron Curtain, renouncing his American citizenship for Communism.

The broadcast of January 6, 1956, occurred on a Friday. The defendant, Lewis', next regular broadcast was on Monday, January 9, 1956. On Monday, January 9, 1956, the defendant, Lewis, broadcasting over the same stations of the Mutual Broadcasting System which had carried the original broadcast of January 6, 1956, admitted that he had made a "horrifying mistake" when he stated that plaintiff had a brother who had fled behind the Iron Curtain and renounced his American citizenship. Defendant, Lewis, admitted that the man he was referring to was not plaintiff's brother, but was the brother of another person whom he had mentioned in his first broadcast. Defendant, Lewis, apologized to plaintiff for this mistake.

Following the above-mentioned broadcast the plaintiff filed twelve suits in various State and Federal Courts throughout the country, including the action in this Court.

Prior to the trial in the instant case, the parties filed an agreement or stipulation in the case in which it was agreed that nine of the pending cases in the various State and Federal Courts would be dismissed with prejudice. It was further agreed that in the instant case in the District of Columbia, the plaintiff might claim damages against the defendant, Fulton Lewis, Jr., and the Mutual Broadcasting System, Inc., for the broadcast throughout the United States notwithstanding any other civil action heretofore brought against these defendants or other radio stations affiliated with Mutual Broadcasting System, Inc., and it was agreed that the substantive law of the District of Columbia should govern the rights and liabilities of the parties in this action.

At the trial of this case the Court ruled that the broadcast of January 6, 1956, was libelous per se and so instructed the jury.

The jury returned a verdict of compensatory damages against the defendants Lewis, Mutual Broadcasting System and Station WWDC, Inc., as a result of the broadcast in the Metropolitan Area of Washington, D. C., in the amount of $45,000. The jury returned a further verdict against the defendants Fulton Lewis, Jr. and the Mutual Broadcasting System, Inc., as a result of the broadcast.

throughout the country, other than the Metropolitan Area of Washington, D. C., in the amount of $100,000. Thus, the jury returned a total verdict for compensatory damages in the amount of $145,000. On the question of punitive damages, the jury found that the defendant, Fulton Lewis, Jr., had not acted with such malice of the plaintiff's rights as would entitle the plaintiff to receive punitive damages and awarded no punative damages.

The first question presented to this Court is whether or not the verdict of the jury is so excessive as to require this Court to grant defendants' motion for new trial. The principles controlling the granting of a new trial for excessive damages in actions for defamation are clearly stated in Newell, Slander and Libel (4th Edition, 1924), page 882, Sec. 790, and are as follows:

"To warrant the granting of a new trial for excessive damages, however, the damages must be not only more than the court would have awarded if it had tried the case, but they must, especially in actions for defamation, so greatly and grossly exceed what would be adequate in the judgment of the court that they cannot be reasonably accounted for except upon the theory that they were awarded, not in a judicial frame of mind, but under the influence of passion—of excited feeling rather than of sober judgment, or of prejudice; of a state of mind partial to the successful party and unfair to the other. The damages must be so exorbitant as to shock the sense of the court, and satisfy it, after making a just allowance, for difference of opinion among fairminded men, that they cannot be accounted for except on the theory that in the particular case the proper fair-mindedness was wanting. It must be confessed that the expression of the principles upon which the new trials are to be granted for excessive damages is somewhat general; but the subject is one which, from its very nature, hardly admits of more specific treatment. The motion appeals in a measure to the discretion of the court, but the discretion must be a judicial one. It is not to be granted or denied at the mere pleasure or fancy or feeling of the court. The matter being one which cannot be determined by the application of any definite and determined rules, it is to be acted upon in the exercise of a sound practical judgment in view of all the relevant facts of the particular case."

See also 33 Am.Jur., Libel and Slander, Sec. 299, page 283; Slander and Libel by Townshend, 3rd Ed., Sec. 293, page 540; Seawell v. A. S. Abell Co., 34 Wash.Law Rep. 195; Keller v. Safeway Stores, Inc., 111 Mont. 28, 108 P.2d 605; Seested v. Post Printing and Publishing Co., 326 Mo. 559, 31 S.W.2d 1045; Hassett v. Carroll, 85 Conn. 23, 81 A. 1013; Stubbs v. Cowden, 179 Va. 190, 18 S.E.2d 275; Snodgrass v. Cohen, D.C.D.C., 96 F.Supp. 292; Hulett v. Brinson, 97 U.S.App.D.C. 139, 229 F.2d 22; Washington Times Co. v. Bonner, 66 App.D.C. 280, 86 F.2d 836, 110 A.L.R. 393; Garfield Analine Works, Inc. v. Zendle, 3 Cir., 43 F.2d 537; Virginian R. Co. v. Armentrout, 4 Cir., 166 F.2d 400, 4 A.L.R.2d 1064; McKee v. Jamestown Baking Co., Inc., 3 Cir., 198 F.2d 551.

It is for the Court to determine whether, construing the evidence most favorably to the plaintiff, the damages awarded to the plaintiff of $145,000 is so excessive as to shock the conscience and lead to the conclusion that the jury was influenced by passion or prejudice.

Plaintiff, Mrs. Pearl A. Wanamaker, is a resident of Seattle, Washington. The plaintiff entered the field of education during World War I and from that time to the present time, she has worked in one capacity or another directly in the field of education or indirectly in related activities. At the time of the broadcast, January 6, 1956, and for many years prior thereto, the plaintiff was Superin-

tendent of Public Instruction in the State of Washington. The plaintiff was known to educators throughout the entire United States and enjoyed a very high reputation among educators. Plaintiff also enjoyed a very high reputation among persons outside of the educational field who knew her personally.

In the trial of this case many people prominent in the field of education appeared and testified. Among those testifying for the plaintiff was the President of the National Education Association, Dr. Ruth A. Stout. On examination of this witness by counsel for the plaintiff the following questions and answers were given:

"Q. In your opinion of Mrs. Wanamaker, what effect did it have? (The broadcast of January 6, 1956.) A. None.

"Q. Why do you say that? A. Because I had such complete belief in her integrity."

Other witnesses holding important positions in the field of education gave similar testimony. During the course of the trial of this case and again during the argument on defendants' motion for a new trial, the Court asked counsel for plaintiff if it was not true that plaintiff's reputation among professional educators was so high that it was not affected by defendant Lewis' broadcast. In both instances plaintiff's counsel admitted that this was true.

As further bearing on the high reputation of the plaintiff in the educational field after the broadcast, evidence was adduced to show that in June, 1956, plaintiff was awarded an honorary degree by Smith College and in June, 1957, she was awarded an honorary degree by Mills College. In February, 1957, plaintiff was selected to present an award to Dr. Worth McClure at the convention of American Association of School Administrators. In October, 1957, the School Executive, a magazine circulated throughout the country to school executives, published an article designating the plaintiff as one of nine outstanding school executives in the United States.

The plaintiff claimed no special damages in this case. The evidence showed that beginning at a time some few months after the broadcast the plaintiff was employed at a salary greater than her salary at the time of the broadcast.

It was established, therefore, that plaintiff suffered no special damages, and it is admitted that she suffered no damage to her reputation among the many people who knew her and were associated with her in the field of education. We have left to consider those damages which are presumed as a matter of law to flow from the broadcast of matter which is libelous per se and those damages for humiliation, embarrassment and wounded feelings suffered by plaintiff as a result of the broadcast.

While a presumption of damages arises from a broadcast which is libelous per se, there is no presumption as to the amount of damages. That plaintiff suffered deep humiliation, grave embarrassment and considerable wounded feelings as a result of this broadcast, there can be no doubt. The question is: Was the total verdict of $145,000 for the presumed damage to reputation and for plaintiff's humiliation, embarrassment and wounded feelings so excessive as to shock the conscience and to lead to the conclusion that the jury was influenced by passion and prejudice. In this connection it is pertinent to note that counsel for plaintiff, in his closing argument to the jury, suggested that an award of $25,000 for damage done to the plaintiff by the broadcast in the Metropolitan Area of Washington, D. C., would not be out of line. The jury returned a verdict of $45,000 for damage to plaintiff in the Metropolitan Area of Washington, D. C., an amount 80% greater than counsel for plaintiff had suggested to the jury in his closing argument.

Construing the evidence in this case most favorably to the plaintiff, and giving the plaintiff the benefit of all rea-

sonable inferences which may be deduced from the evidence, it is the opinion of this Court that the verdict of the jury awarding $145,000 total damages to the plaintiff is so excessive as to shock the conscience and lead to the conclusion that the jury was influenced by passion or prejudice.

The second ground urged by defendants in their motion for a new trial is that the cross-examination of one of defendants' witnesses by counsel for the plaintiff was prejudicial to defendants. The defendants called to the stand a witness from Yakima, Washington. This witness testified that he had known the plaintiff's reputation in Washington State both before and after the broadcast of January 6, 1956, and that her reputation was unchanged by the broadcast. This witness testified that plaintiff's reputation was good before the broadcast and that it was good after the broadcast. Plaintiff's counsel opened his cross-examination of this witness in the following manner:

"Q. Fred, did you vote for her? A. What?

"Q. Did you vote for her? A. I voted for Mrs. Wanamaker ever since she was in office, as far as I know.

"Q. Now, Fred, I represented you once in a carnal knowledge case, did I not? A. Now, just a minute

—

"Mr. Robb: I object to this, Your Honor.

"The Court: Just a moment.

"Witness: I would like to answer that. There is just one thing I would like to say.

"The Court: Do you object?

"Mr. Robb: I think he better answer that now.

"Witness: Was that prior to or after the time that I came to your office and found you slopped over your desk dead drunk and you didn't recognize me?

"The Court: Just a moment. That's enough of this.

"Mr. Tonkoff: That is a falsity.

"Mr. Robb: You asked for it.

"The Court: Wait a minute. All that testimony will be stricken and the jury will pay no attention to it."

Counsel for plaintiff followed this questioning by asking the witness if he had not been convicted of a felony. The witness denied that he had been convicted of a felony, whereupon plaintiff's counsel asked if it was the witness' testimony that he had not been convicted of a felony and the witness answered "Never."

Counsel's tone of voice and manner in putting the questions to this witness were such as to strongly indicate that plaintiff's counsel believed the witness was testifying falsely when he denied that he had been convicted of a felony. The questioning by plaintiff's counsel was calculated to make the jury believe that the witness had been convicted of the crime of carnal knowledge. Had the witness in fact been convicted of such a crime, proof of this fact would have been admissible to attack his credibility.

The D.C.Code, 1951, § 14–305, provides as follows:

"No person shall be incompetent to testify, in either civil or criminal proceedings, by reason of his having been convicted of crime, but such fact may be given in evidence to affect his credit as a witness, either upon the cross-examination of the witness or by evidence aliunde; and the party cross-examining him shall not be concluded by his answers as to such matters. In order to prove such conviction of crime it shall not be necessary to produce the whole record of the proceedings containing such conviction, but the certificate, under seal, of the clerk of the court wherein such proceedings were had, stating the fact of the conviction and for what cause, shall be sufficient."

The Court assumed that when counsel for the plaintiff asked the witness if he

had been convicted of a felony, that counsel for plaintiff had available to him evidence, admissible under the statute, which would establish that the witness had been convicted of a felony, to be offered in the event the witness denied it. Counsel for plaintiff had no such evidence, and, after the trial, admitted that the witness had not been convicted of the felony of carnal knowledge, but that it had been counsel's impression at the time of the trial that he had been so convicted.

█ It has long been established in this jurisdiction that it is improper for impeachment purposes to show accusation, arrest or indictment for a crime against a witness in any case, civil or criminal. Sanford v. United States, 69 App.D.C. 44, 98 F.2d 325; Chebithes v. Price, 59 App.D.C. 212, 37 F.2d 1008; see also cases in other jurisdictions: Walker Grain Co. v. Blair Elevator Co., 5 Cir., 254 F. 422; United States v. Nettl, 3 Cir., 121 F.2d 927; State v. Patton, 102 Mont. 51, 55 P.2d 1290, 104 A.L.R. 76.

█ If it is improper for impeachment purposes to show accusation, arrest or indictment for a crime against a witness in a civil case, it is manifestly no less improper to ask such a witness if he has been convicted of a felony to wit: carnal knowledge, when, in fact, the witness has not been so convicted.

It is clear then that the questions put to this witness by plaintiff's counsel were highly improper. The Court cannot escape the conclusion that the questioning by plaintiff's counsel of defendants' witness as to whether he had been convicted of a felony, when, in fact, he had not been, was not only improper but was highly prejudicial to the defendants. This conclusion is reenforced by the size of the verdict for damages brought in by the jury. The Court is of the opinion that the interests of justice demand the granting of a new trial in this case.

Defendants' motion for a new trial is granted. Counsel will present an appropriate order.