Ione JENKINS, Plaintiff-Appellee,

v.

GENERAL MOTORS CORPORATION, Defendant-Appellant.

No. 29084.

United States Court of Appeals,
Fifth Circuit.

June 30, 1971.

Rehearing and Rehearing En Banc
Denied Sept. 24, 1971.

**378**

Charles H. Kirbo, R. Byron Attridge, Joseph R. Gladden, Jr., Atlanta, Ga., Ross L. Malone, General Counsel, General Motors Corp., Detroit, Mich., King & Spalding, Atlanta, Ga., of counsel, for appellant.

Thomas M. Odom, Millen, Ga., Florence Hewlett Dendy, Charles E. McCranie, Claude R. Ross, Baxter H. Finch, Atlanta, Ga., George W. Fryhofer, Waynesboro, Ga., Frank M. Eldridge, Atlanta, Ga., Ross & Finch, Atlanta, Ga., Odom & Dendy, Millen, Ga., of counsel, for appellee.

Before JOHN R. BROWN, Chief Judge, and TUTTLE and INGRAHAM, Circuit Judges.

INGRAHAM, Circuit Judge:

Ione Jenkins was severely injured when the Corvair automobile in which she was a passenger suddenly veered off the road and landed in a ditch on April 15, 1962. She predicated her action against General Motors Corporation on the grounds of negligent failure to properly tighten and inspect a nut on a bolt in the left rear suspension system. A jury returned a verdict for plaintiff and awarded damages in the sum of $425,000 and judgment was entered thereon. On this appeal appellant raises (1) the insufficiency of evidence to submit to the jury, (2) the alleged error of the district court in excluding certain evidence regarding one of appellee's expert witnesses, and (3) the alleged error in denying appellant's motion to exclude certain testimony of Ione Jenkins.

The evidence in the case indicates that appellee and her date, Billy Mixon, each sixteen years of age, left a drivein theater near Swainsboro, Georgia on the night of April 15, 1962, and headed toward Swainsboro on a straight and level gravel-top asphalt road. Mixon was driving the two months' old 1962 Corvair which registered about 2200 miles on its odometer. Having traveled approximately 1800 feet, the car suddenly veered and pulled to the left, became "uncontrollable", slammed into a concrete culvert off the left shoulder of the road and turned over into a ditch. As a result appellee Jenkins was permanently paralyzed in a major portion of her body.

Testimony of appellee's witnesses, including the trooper who investigated the accident scene, established that there was no evidence of excessive speed, of use of alcoholic beverages, or of improper driving. Appellee Jenkins and

Billy Mixon, the only eyewitnesses to the occurrence, testified that they were driving along when the automobile suddenly veered to the left and became uncontrollable. Mixon tried to counteract this by turning the wheel fully to the right. In response to Miss Jenkins' inquiry, Mixon cried out "I have lost my steering." Mixon testified that he tried to apply his brakes, but that when he hit them, the pedal went to the floor board and he got no braking action.

Appellee's theory of the cause of the accident was that a nut on a bolt in the left rear suspension system was inadequately torqued during assembly at the appellant's factory and that under normal operation conditions this nut worked loose and dropped off, allowing the bolt to drop out. The absence of this bolt and the concomitant additional stresses and strains on the remaining adjacent bolt caused this second bolt to "wallow out" the hole in which it was placed during normal operation of the car. Consequently, at the time of the accident, this second bolt pulled through leaving the components unsecured and causing the left rear suspension assembly to sweep back, canting the wheel outward and to the rear. Appellee contends that this not only created the sudden pull to the left, but also resulted in a loss of a portion of the brake assembly and the subsequent brake failure.

I.

The principal question in this case is presented by appellant's contention that the district court erred in denying its motions for a directed verdict and for judgment notwithstanding the verdict. Appellant vigorously asserts that the damage to the rear suspension system was the result, not the cause, of the accident, and that the theory developed by appellee is so speculative that the jury should not have been permitted to draw the series of inferences required to establish the ultimate fact of appellant's negligence.

Generally, a directed verdict is granted in two types of situations, neither of which is present in the case at bar. "First, where there is a complete absence of pleading or proof on an issue or issues material to the cause of action or defense. * * * Second, where there are no controverted issues of fact upon which reasonable men could differ." 5 Moore, Federal Practice, ¶ 50.02 [1] (2d Ed. 1969). On motions for directed verdict and J.N.O.V. the trial court, and a reviewing court, must view the evidence and all inferences most favorable to the party against whom the motion is made. Boeing v. Shipman, 411 F.2d 365 (5th Cir., 1969);[1] 2B Barron & Holtzoff, Federal Practice and Procedure, § 1075, p. 378 (Wright Ed. 1961).

1. The *Boeing* case firmly established that for diversity cases in this Circuit a Federal and not a State test for sufficiency of evidence to create a jury question would be used, and that test is:

"On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidence—not just that evidence which supports the non-mover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury. A mere scintilla of evidence is insufficient to present a question for the jury. The motions for directed verdict and judgment n.o.v. should not be decided by which side has the better of the case, nor should they be granted only when there is a complete absence of probative facts to support a jury verdict. There must be a conflict in substantial evidence to create a jury question. However, it is the function of the jury as the traditional finder of the facts and not the Court, to weigh conflicting evidence and inferences, and determine the credibility of witnesses." 411 F.2d at 374–375.

Appellant asserts that the facts are "equiponderant" as to what caused the automobile to strike the culvert. In support of its position at trial, appellant introduced numerous films, exhibits and expert opinion testimony concerning the degree of tightening of the bolt, the shape of the pull-through hole, and of tests conducted on Corvair automobiles. A witness testified that he found the "missing" bolt forty-one feet away from the scene of the accident, and according to appellant's experts the bolt was sheared at impact. This was contrasted with the expert testimony utilized by appellee supporting her theory of the case, including evidence of the condition of the brakes, of rotational marks on the left rear axle indicating it was out of position before impact, and of the condition of the left rear wheel, found "canted out" after the accident but with evidence of only minimal damage from impact.[2]

It all boils down to a battle of experts and, as such, the trial court did not err in submitting the case to the jury. The jury was allowed to inspect and even handle the various components of the rear suspension assembly involved, including the "wallowed out" hole and the "missing" bolt. In addition, they viewed the hundreds of photographs, exhibits and the movies that were shown. The jury was not bound by the appellant's evidence, nor forced to accept the testimony of its experts, even if uncontradicted. Remington Arms Company, Inc. v. Wilkins, 387 F.2d 48, 54 (5th Cir., 1967); American Cyanamid Company v. Fields, 204 F.2d 151, 153 (4th Cir., 1953). The jury was authorized to make reasonable inferences even if some speculation and conjecture was required. Lones v. Detroit, Toledo & Ironton Railroad Co., 398 F.2d 914, 919 (6th Cir., 1968); Equitable Life Assur. Society of the United States v. Fry, 386 F.2d 239, 248 (5th Cir., 1967). We reject appellant's contention that there was an absence of probative facts to support the conclusion reached by the jury.

Appellant, however, cites several auto accident cases which it contends establishes that the evidence was insufficient to allow the instant case to go to the jury. Each case of this nature turns on its own facts, and facts differ. Many courts have been faced with similar conflicts in evidence under circumstances parallel to those in the case at bar. For example, in Kanatser v. Chrysler Corporation, 199 F.2d 610, 616–617 (10th Cir., 1952), cert. denied 344 U.S. 921, 73 S.Ct. 388, 97 L.Ed. 710 (1953), the court stated:

"The allegation of negligence in this case was to the effect that the Chrysler Corporation sold and delivered to the petitioner a new Dodge automobile with a defective 'tie rod'; that while riding in the same upon the highway five days after the purchase and delivery, the defective tie rod failed, causing the accident and damages complained of. The verdict of the jury is necessarily based upon a finding of negligence, as alleged. The first assignment of error is that on the evidence, the trial court should have directed a verdict for the respondent for lack of sufficient evidence to show that the tie rod was defective when the car was sold and delivered, or that the accident was caused from the failure of such alleged defect.

"There was competent evidence to the effect that while the car was traveling upon the highway at a reasonable rate of speed, the left front wheel suddenly turned toward the inside of the highway causing a collision with an oncoming car. It was also shown that the left tie rod was broken, and there was expert testimony to the effect that it was partially broken and in a defective condition before the accident occurred. While there was competent evidence to the contrary, the

---

2. Appellant urges that the theory of appellee's experts was contradicted by the failure of the two eyewitnesses to feel anything mechanically wrong prior to the accident. We reject this argument in view of their testimony concerning Mixon's attempt to turn the wheels and to obtain braking action to no avail. The jury was authorized to conclude that the failure of which they spoke did in fact occur.

petitioner's proof was entirely sufficient to present issuable facts for the jury."

In Hupp Motor Car Corporation v. Wadsworth, 113 F.2d 827, 828 (6th Cir., 1940), a six weeks' old car traveling at 35 miles per hour on a dry level cement road suddenly veered and swerved back and forth and finally struck a culvert killing its occupant. After the accident, "it was found that the pitman arm of the steering gear, which should be held upon the ball stud of the steering drag link by a castellated nut secured by a cotter pin, was disconnected and that the nut and cotter pin were missing." Despite the conflict in expert testimony and the parties' theories concerning causation, the court found that:

"the jury might rightfully have inferred that the pitman arm had been loose. It was testified that otherwise no wear would have been shown on the taper. * * * Two experts * * * testified that evidently the nut had been working loose, and stated as their opinion that no cotter pin had ever been properly inserted, if inserted at all, in the cotter pin hole." 113 F.2d at 829.

The defendant's motions for directed verdict and J.N.O.V. were denied.

More recently, in Nevels v. Ford Motor Co., 439 F.2d 251 (5th Cir., 1971), this court was faced with an automobile accident case involving a 1967 Mustang in which plaintiff claimed that Ford Motor Company was negligent in the manufacturing or assembling of the steering mechanism because a retaining nut was not properly torqued or secured with a sealing compound:

"The experts were diametrically opposed concerning the condition of the splines and the retaining nut, as well as the cause of the conditions found. On the one hand, it was unequivocally stated that so long as the retaining nut was on the shaft, even in a loose condition, there could be no slippage of the shaft and no wear on the splines —that the splines showed no evidence of wear but showed only damage undoubtedly caused by the impact of the accident. On the other hand, it was stated, equally explicitly, that the splines showed considerable wear caused by the shaft slipping because the retaining nut was loose. This condition, it was said, made the steering virtually inoperable." 439 F.2d at 254.

Nevertheless, the court held:

"The jury could have fairly concluded from all of the evidence, though disputed, that Ford was negligent in not having tightened the wheel retaining nut by applying a proper torque on it, and in failing to properly secure the nut to the shaft by a sealer or on an epoxy material. No error was committed in submitting the case to the jury. Indeed, it would have been error to do otherwise." 439 F.2d at 256.

The trial court in the instant case likewise correctly overruled appellant's motions for directed verdict, J.N.O.V., and for new trial.

II.

■■ Appellant next claims that the district court erred in precluding appellant from introducing, for purposes of impeachment, evidence that one of the appellee's expert witnesses was under indictment for perjury. It is clear, however, under the law of Georgia and in the Federal courts that it is improper for impeachment purposes to show the accusation, arrest, or indictment for a crime to use against a witness in a civil or criminal case. The courts of Georgia have spoken on this subject a number of times. See e. g., Smallwood v. State, 95 Ga.App. 766, 98 S.E.2d 602, 604 (1957); Davis v. State, 60 Ga.App. 772, 5 S.E.2d 89, 90 (1939); Beach v. State, 38 Ga. 265, 75 S.E. 139. The well settled rule in Federal courts has also been to require that a conviction be had in order to undermine the trustworthiness of a witness. Rizzo v. United States, 304 F.2d 810, 831 (8th Cir., 1962); Hudson v. United States, 387 F.2d 331, 332 (5th Cir., 1967); Roberson v. United States, 249 F.2d 737, 742 (5th Cir., 1957); Wanamaker v. Lewis, 173 F.Supp. 126, 131 (D.D.C., 1959).

Appellant has presented no valid reason to depart from this well established principle and the court below properly sustained appellee's objection to the proffered cross examination of witness Doyle.

### III.

Finally, appellant contends that the court below erred in ruling that appellant waived its objection to certain testimony of appellee Ione Jenkins and in denying appellant's motion for mistrial, or for reprimand of appellee's trial counsel in the presence of the jury.

The essence of appellant's argument is that the jury was profoundly influenced by the physical appearance of Miss Jenkins in the court room in her wheel chair or on a stretcher, and that her condition was accented by part of her testimony concerning bearing an illegitimate child while paralyzed, her desperate search for help, her lack of financial support, and the degree of her disability and discomfort. Appellant alleges that much of this information was elicited by the leading questions of Miss Jenkins' trial counsel.

As appellant concedes, much of this testimony was corroborative and relevant to the medical evidence relating to her claim for disability, pain and suffering, and mental anguish. Her testimony about not having a home or people to care for her was relevant in the sense that this indicated she often required hospitalization to receive proper medical attention. During and immediately following the long direct examination of Miss Jenkins, appellant's counsel interjected no objections and made no attempt to gain the trial judge's attention. Appellant's trial counsel then declined to exercise his right of cross-examination and asked to make a motion outside the presence of the jury. It was at that time he sought a mistrial or the ruling out of the evidence or a reprimand of appellee's trial counsel before the jury.

During an ensuing colloquy between the court and appellant's counsel, the court acknowledged that there were some items in the testimony of Ione Jenkins that he would have excluded if an objection had been made. He agreed to make a requested charge to the jury on the question of sympathy.[3] Appellant's counsel admitted to the judge that he had made a tactical decision by sitting silently and not objecting to any of the testimony. He told the court that he was "prepared to live with" his decision.[4]

---

3. The court below did give the charge climactically at the end of its long set of instructions. The charge was as follows:

"Now, ladies and gentlemen, certain evidence has been admitted in this case indicating not only the physical condition of the Plaintiff, but also that she is and has been since the time of the accident, unable to take care of herself and her child, and that she has no family or other persons upon whom she can depend. This would naturally create in your mind sympathy for the plaintiff.

"I charge you, however, that in deciding this case, you should not be influenced in any way by sympathy. Neither sympathy nor prejudice or favoritism for or against either party should in any way influence you in reaching your verdict.

"The sole question for your consideration is whether the accident in this case was caused by the failure of the Defendant to exercise ordinary care in the manufacture and inspection of the automobile. And any feelings of sympathy you may have are not to be considered in your deliberations and determinations on this question."

4. The colloquy between the court and appellant's trial counsel included the following:

"THE COURT:

Well, there were some things that were, some areas of inquiry and a response which I think are not involved in this case. But I think through that it was the duty of counsel, if he cared to do so, to object to them. And I think many of the things of which he complains—for example, how she picked up her pocketbook, how she would eat something, how she does this, that and the other, are the very essence of pain and suffering.

Now I don't know about the, her, her financial situation. I agree that has nothing to do with this case. The

■ Appellant's attempt to fault the trial judge when most of the testimony in question was relevant and admissible is unavailing. Once again, appellant has provided us with no meritorious reason to depart from the general rule that a timely objection is necessary to bring to the trial court's attention alleged errors in the conduct of the trial. As this court stated in Colonial Refrigerated Transportation, Inc. v. Mitchell, 403 F. 2d 541, 551–552 (5th Cir., 1968):

"Rule 46 of the Federal Rules of Civil Procedure states, '[I]t is sufficient that a party, at a time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take or his objection to the action of the court and his grounds therefor * * *.' This implies, however, that such an exposition must be made. This rule is ' "not a mere technicality, but is of substance in the administration of the business of the courts." ' Revlon, Inc. v. Buchanan, 5 Cir., 1959, 271 F.2d 795, 798, 81 A.L.R.2d 222.

"This rule is simply a codification of the prior practice of the federal courts. Johnston v. Reily, 1947, 82 U.S.App. D.C. 6, 160 F.2d 249. The Supreme Court long ago held:

" 'Objections to the admission of evidence must be of such a specific character as to indicate distinctly the grounds upon which the party relies, so as to give the other side full opportunity to obviate them at the time, if under any circumstances, that can be done.' Noonan v. Caledonia Gold Mining Co., 1887, 121 U. S. 393, 400, 7 S.Ct. 911, 915, 30 L. Ed. 1061."

See also Rowe v. Pennsylvania Greyhound Lines, 231 F.2d 922, 925 (2nd Cir., 1956), cert. denied 351 U.S. 984, 76 S.Ct. 1052, 100 L.Ed. 1498.

■ The Georgia courts, as a general rule, also require that on a motion for new trial the movant must show that he objected to the evidence at the time it was offered. Phillips v. State, 108 Ga. App. 540, 133 S.E.2d 708 (1963); Holloway v. State, 101 Ga.App. 585, 114 S.E. 2d 538 (1960).

In Har-Pen Truck Lines, Inc. v. Mills, 378 F.2d 705 (5th Cir., 1967), appellants were urging that a mistrial should have been granted because of prejudicial statements during final argument by plaintiffs' counsel. This court quoted from Judge Hutcheson's opinion in Maryland Casualty Co. v. Reid, 76 F.2d 30, 33 (5th Cir., 1935):

"At common law and by statute, the federal District Judge is charged with the duty of granting a new trial in a jury case where, in his opinion, it went unjustly and injuriously out of bounds. This court, as to law cases, is a court of error. We do not retry the case. We review the record made in it for reversible error, error by the judge, in conducting or failing to conduct the trial, which has, by permitting the case to get out of bounds, prejudiced the just result. * * * Abstract inerrancy is hardly possible in the trial of a case in the federal court; it is never

---

financial condition of her family has nothing to do with this case.

And there were certain other items that have nothing to do with this case. And I can understand that Mr. Kirbo was confronted with a tactical decision.

MR. KIRBO:
Right, sir.

THE COURT:
But when you made your tactical decision, you have to live with it, don't you?

MR. KIRBO:
Right, sir.

THE COURT:
I mean, that's—

MR. KIRBO:
I'm prepared to live with it, too, Judge."

**384**

an essential to a valid trial there. Jennings v. United States (C.C.A.) 5 Cir., 73 F.2d 470; Community Natural Gas Co. v. Henley (C.C.A.) 5 Cir., 54 F.2d 59. Too much is said and done about too little in the heat and hurry of a trial, for it all to be important. Things of no moment in their transpiring are not made momentous merely by making record of them. Therefore, though the District Judge is an administrator primarily charged with the just conduct of the trial, he may not ordinarily be put in error merely because an aberration from trial rules has occurred. It is the duty of counsel by objection to call such threatened or actual departure to the judge's attention, and invoke his corrective action, and, if overruled, to make it appear that prejudice has resulted."

The court in *Har-Pen* then went on to hold that "[t]he close supervision repeatedly demonstrated by the trial judge in the present case corrected the error to the extent correctible; and the trial judge was within his discretion and his peculiar competence in assessing the error as not sufficiently inflammatory to call for a new trial." 378 F.2d at 715.

■ Likewise, in the instant case, we find that the trial judge did not abuse his discretion in failing to grant appellant's motions with respect to the testimony of Ione Jenkins, and that he did everything in his power to ensure a fair jury trial.

The judgment of the district court is affirmed.

### ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.