NOONAN *v.* CALEDONIA MINING COMPANY.

APPEAL FROM THE SUPREME COURT OF THE TERRITORY OF DAKOTA.

Argued March 29, 30, 1887. — Decided April 18, 1887.

During the trial in Dakota of adverse claims to a mineral location, it appeared that one M. not a party to the record, asserted an interest in the lode and was a necessary party to a complete determination of the matters in controversy. By consent of parties he was made a codefendant, defendant's counsel appearing for him, and an entry of it was made in the journal of proceedings, and a further entry that "any amendments to pleadings required to be prepared and served during the pendency of this action or at its conclusion." The trial then proceeded, M. participating as codefendant, and resulted in a verdict for the plaintiff. Before the entry of judgment plaintiff's attorney served on defendants' attorney a notice of an amendment to the complaint by inserting therein the name of M., together with an additional paragraph averring that he set up a claim of interest in the property, that it was without foundation, and asking the same relief against him as against the other defendants. Objection was taken to this mode of amending the pleadings for the first time in the Supreme Court of the territory on appeal. *Held,* That M. was sufficiently made party to the case by the proceedings and the amendment filed, and that he must be presumed to have adopted the answer of his codefendants.

Where an objection to the admission of evidence is so general as not to indicate the specific grounds upon which it is made, it is unavailing on appeal unless it be of such a character that it could not have been obviated at the trial.

Where a party was, on the 28th February, 1877, in possession of a mining claim in the Black Hills of Dakota, within the Indian reservation, with the requisite discovery, with the surface boundaries sufficiently marked, with the notice of location posted, with a disclosed vein of ore, he could, by adopting what had been done, causing a proper record to be made, and performing the amount of labor or making the improvements necessary to hold the claim, date his rights from that day; and such location, labor, and improvements gave him the right of possession.

THIS was an action to determine the rights of the parties to mining ground in Lawrence County, in the territory of Dakota. In April, 1878, one of the defendants below, and of the appellants here, John Noonan, asserted ownership to a tract of mineral land in that county, bearing the name of the Bobtail Lode. It was of great value, and he desired to obtain a

patent of the United States for it. He therefore pursued the course prescribed in such cases by §§ 2325 and 2326 of the Revised Statutes; and, on the 20th of that month, filed the necessary application in the proper land office of the district.

At the same time Henry Lackey and eight other persons asserted ownership of mining ground known as the Caledonia Lode, which conflicted with the Bobtail claim, as alleged, to the extent of three acres and fifty-seven hundredths of an acre. They, therefore, in May, 1878, filed in the land office an adverse claim to the application of Noonan; and, in June following, brought the present action, to determine their respective rights to the disputed ground.

Subsequently, these adverse claimants sold their interest in the Caledonia lode to Thomas Bell, of San Francisco; and he conveyed the property to the Caledonia Gold Mining Company, a corporation organized under the laws of California. Upon application to the court, this company was substituted as plaintiff in the action, without prejudice to the rights of the defendants. An amended complaint was thereupon filed in its name, and substituted for the original one. It alleged the incorporation of the plaintiff under the laws of California; its compliance with the laws of Dakota relating to foreign corporations, to enable it to transact business, and to acquire, hold, and dispose of property in the territory; the transfer of the Caledonia lode to Thomas Bell; and his conveyance of the property to the company. It also set forth the original location of the lode by four of the original plaintiffs, on the 21st of June, 1876, and their actual possession thereof afterwards; and that they and the others of the original plaintiffs, who had become interested with them, made, on the 15th of March, 1877, an additional and supplementary claim and location of the Caledonia lode, and, on the same day, caused a certificate or notice of the original claim and location, as well as of the additional and supplementary claim and location, to be recorded in the mining records of the district.

The amended complaint further alleged, that, from its original location in June, 1876, the plaintiff or its grantors had been in the actual and continuous possession of the Caledonia

claim, and every part of it, and in accordance with the laws
of the United States and of the territory of Dakota, and the
local rules and regulations of miners in the district; and had
expended, in labor and money, more than five thousand dol-
lars in its development and improvement; that the defendant
Noonan claimed an interest in a portion of its mining ground,
to the extent of three acres and forty-seven hundredths of an
acre, by virtue of an alleged location of a quartz mining claim,
called the Bobtail lode, made by his predecessors in interest,
in February, 1876, which was invalid and a cloud upon its title
to the Caledonia lode. It prayed that the defendant might
answer and set out particularly his claim to that portion of
the Caledonia lode which conflicted with the Bobtail lode,
and the nature of it; and that it might be adjudged that he
had no estate or interest therein, and that he be enjoined from
asserting any right or title to it.

The defendant, in his answer, denied the allegations of the
complaint, except as they were afterwards admitted; and,
specifically, any knowledge of the incorporation of the plain-
tiff, or of its compliance with the laws of Dakota in regard to
foreign corporations; admitted his claim to be the owner of
the Bobtail lode, his application for a patent, and the adverse
action of the former plaintiffs; and set up the discovery and
location of that lode on the 24th of February, 1876, by parties
through whom he derived his interest.

A replication traversed some of the matters set up in the
answer, and asserted an abandonment and forfeiture of the
interests of the original locators of the Bobtail lode.

The action was tried by the court without the intervention
of a jury, by consent of parties. During the trial it appeared
that one Thomas F. Mahan asserted an interest in the Bobtail
lode, and that he was a proper, if not a necessary, party to a
complete determination of the matters in controversy. There-
upon, by consent of parties, he was made a codefendant in
the action. The following was the entry made, at the time,
in the journal of proceedings, following the title of the cause:

"Now, on this 15th day of July, A.D. 1880, the trial of the
cause is resumed. By consent of all parties, Thomas F.

Mahan is made a party defendant in this action. Counsel for defendant appear and answer instanter for him, any amendments to pleadings required to be prepared and served during the pendency of this action, or at its conclusion."

It appeared that subsequently the two defendants joined in all proceedings taken. Before the entry of judgment, the plaintiff's attorneys, in order to make the record complete as to the new defendant, Mahan, instead of inserting his name at the proper place in the complaint, or re-writing it entirely, served upon the defendants' attorneys, and filed with the judgment roll, the following amendment:

"In the District Court, First Judicial District, Lawrence County, Dakota Territory.

"Caledonia Gold Mining Company, (formerly Henry Lackey et al.,) Plaintiff,

*vs.*

"John Noonan and Thomas F. Mahan, Defendants.

"Now comes the above-named plaintiff, and in pursuance and by authority of the court hereinbefore made, on the 15th day of July, 1880, making the said Thomas F. Mahan a defendant in this action, amends its amended and substitute complaint, which was herein filed November 6th, 1879, by inserting therein the name of the said Thomas F. Mahan as a defendant, and by inserting in and adding to said complaint, immediately after the subdivision thereof numbered nine, and before the prayer thereof, the following allegation, to wit:

"10. And plaintiff further avers that the defendant, Thomas F. Mahan, has, or claims to have, some right, title, or interest adverse to plaintiff in or to that portion of the said Caledonia lode claim above described by survey; that said claim of said defendant Mahan is without foundation or right as against plaintiff, but said Mahan persists in the same and makes said claim, as plaintiff is informed and believes, under the said alleged and pretended location of the said alleged Bobtail lode claim above described as coöwner with, and claiming under the same right as, defendant Noonan, as above mentioned, and that said claim of said Mahan casts a cloud upon plaintiff's

title to its said portion of said Caledonia lode above described, and plaintiff, therefore, makes said Mahan a defendant in this action, and asks the same judgment, decree, and relief against him as hereinafter prayed against said defendant Noonan.

"CLAGETT & DIXON,
*Att'ys for Pl'tff.*"

No objection was taken in the District Court to this mode of amending the pleadings. It was made the subject of comment for the first time in the Supreme Court of the territory when the case was there on appeal, when it was contended that the amendment was irregular and insufficient, and left the original complaint without any allegations against the defendant Mahan, against whom, with the original defendant, the judgment was entered; and, therefore, that the judgment could not be sustained by the pleadings. That court held the objection to be untenable; and its ruling in this respect was assigned as error.

On the trial, the plaintiff, to establish its corporate existence, gave in evidence a copy of its articles of incorporation, certified by the clerk of the city and county of San Francisco, the place of its principal business, under his official seal, to be a correct copy of the original on file in his office; to which there was also appended a certificate of the secretary of state of California, under the seal of the state, that it was also a correct copy of those on file in his office. By the law of California, the articles upon which a certificate of incorporation is issued are required to be filed with the clerk of the county in which the principal business of the corporation is to be conducted, and a certified copy with the secretary of state. Civil Code, § 296. The plaintiff at the same time produced a copy of the articles on file in the office of the secretary of the territory, certified by him to be a correct copy, with the seal of the territory annexed. To the introduction of these certified copies it was objected, generally, that they were "incompetent, irrelevant, and immaterial," without any specification of the particular ground on which they were thus objectionable.

In the Supreme Court of the territory, on appeal, it was objected that the documents were not properly authenticated as required by the act of Congress, and that the certificates were signed by deputy officers; but that court held that the specific objection being one which, if taken below, might have been obviated there, it could not be urged on appeal under the general objection taken; and, therefore, ruled the point untenable. This ruling was also assigned as error.

Numerous other objections were taken by the plaintiffs, during the progress of the trial, to the introduction of evidence of acts of the predecessors of the plaintiff in locating and developing the Caledonia lode, previous to February 28, 1877, when the right of the Indians to the territory was extinguished by agreement with the United States. These and objections to the findings of the court on matters of fact constituted, in addition to those mentioned, the burden of the appellant's complaint. The court found for the plaintiff, and rendered judgment that it was the owner and entitled to the possession of the ground in controversy. On appeal to the Supreme Court of the territory, the judgment was affirmed, and the defendants have brought the case to this court.

*Mr. Daniel McLaughlin* for appellants. *Mr. William R. Steele* was with him on the brief.

*Mr. T. L. Skinner* and *Mr. S. S. Burdett* for appellee.

MR. JUSTICE FIELD, after stating the case, delivered the opinion of the court.

The exceptions taken in the District Court were fully considered and answered by the Supreme Court of the territory in a clear and satisfactory opinion. The objections to the sufficiency of the evidence to justify the findings of fact cannot be heard here; they were matters for consideration only in the courts below. Of the numerous assignments of error presented to us, we deem only three of sufficient importance to require special consideration. They are:

1. That the judgment is not sustained by the pleadings;

2. That the articles of incorporation of the plaintiff were admitted in evidence without due authentication; and,

3. That evidence of acts of the predecessors of the plaintiff in locating and developing the Caledonia lode prior to the relinquishment of the Indian title to the United States was improperly admitted.

1. There would be some force in the objection that the judgment is not sustained by the pleadings, if the amendment joining Mahan as a codefendant with Noonan could not be read as a part of them. The judgment is against him as well as against Noonan, and there must appear somewhere in the record allegations by which it can be supported. It would have been the better course, when the order was entered that Mahan be joined as a codefendant, for the attorneys of the plaintiff to have had his name at once inserted in the complaint, with such other changes as to make the allegations apply to him. That such changes might have been made by consent of parties, without the formality of suspending the trial, and filing a new complaint, and waiting for an answer to it, there can be no doubt; and when thus made, the parties would be estopped from any subsequent objection to them. A provision of the Code of Civil Procedure of Dakota vests ample authority in the court to make changes of this character in furtherance of justice. Its language is: "The court may, before or after judgment, in furtherance of justice, and on such terms as may be proper, amend any pleadings, process or proceeding, by adding or striking out the name of any party; or by correcting a mistake in the name of a party, or a mistake in any other respect, or by inserting other allegations material to the case, or, if the amendment does not change substantially the claim or defence, by conforming the proceeding or pleading to the facts proved." § 142.

The trial continued after the amendment, the defendant Mahan participating in all its proceedings as if his name had been inserted in the complaint in the most formal manner, and he had answered it specifically. The agreement provided that the amendment might be made during the pendency of the action, or on its conclusion, and in accordance with it the

amendment to the complaint filed with the judgment roll may properly be read and treated as part of the pleadings. If the defendant Mahan had desired to file a formal answer to the allegations of the complaint, he should have insisted upon it at the time. He was probably satisfied with the answer of his codefendant on file, which put in issue the plaintiff's title and set up all that he could have pleaded for himself. He had on the trial all the benefits of the most formal answer, and his connection with the case as a party sufficiently appears from the amendment filed.

2. The objection to the introduction of the articles of incorporation at the trial was that they were "immaterial, irrelevant, and incompetent" evidence. The specific objection now urged, that they were not sufficiently authenticated to be admitted in evidence, and that the certificates were made by deputy officers, is one which the general objection does not include. Had it been taken at the trial and deemed tenable, it might have been obviated by other proof of the corporate existence of the plaintiff or by new certificates to the articles of incorporation. The rule is universal, that where an objection is so general as not to indicate the specific grounds upon which it is made, it is unavailing on appeal, unless it be of such a character that it could not have been obviated at the trial. The authorities on this point are all one way. Objections to the admission of evidence must be of such a specific character as to indicate distinctly the grounds upon which the party relies, so as to give the other side full opportunity to obviate them at the time, if under any circumstances that can be done. *United States* v. *McMasters,* 4 Wall. 680; *Burton* v. *Driggs,* 20 Wall. 125; *Wood* v. *Weimar,* 104 U. S. 786, 795.

3. The objection urged to the admission of evidence of acts done by the grantors of the plaintiff in locating and developing the Caledonia mine previous to February 28, 1877, is founded upon the treaty between the United States and the Sioux Indians, concluded on the 29th of April, 1868, and ratified on the 16th of February, 1869. By the second article, a district of country embracing the region known as the Black Hills of

Dakota, and which includes the mining property in controversy, was set apart as a reservation for the absolute and undisturbed use and occupation of those Indians, and such other friendly tribes or individual Indians to whose admission, from time to time, they and the United States might consent. And the United States stipulated that no person, except those designated and authorized by the treaty, and such officers, agents, and employes of the government as might be authorized to enter upon Indian reservations in the discharge of duties enjoined by law, should ever be permitted "to pass over, settle upon, or reside in the territory" described, or in such territory as might be added to the reservation. 15 Stat. 635.

In a subsequent agreement with the Indians, ratified by act of Congress on the 28th of February, 1877, the northern and western boundaries of the reservation were changed, leaving out the country of the Black Hills, which was relinquished by the Indians to the United States. That region was thus freed from the prohibition against settlement upon it, and opened like other public lands of the United States to exploration and occupation under the mining laws. It is contended that the treaty operated as an actual prohibition against all acts taken by the predecessors of the plaintiff in the location and development of their mine, until the supplemental agreement of 1877, and that no support to their title can be derived from such acts, and, therefore, that no evidence of them was admissible.

Notwithstanding the prohibition of the treaty, as soon as it became known, early in 1874, that the precious metals existed in the Black Hills, large numbers of persons entered upon the reservation and proceeded to appropriate mining ground, and to work and develop the mines. The subject soon attracted the attention of the public authorities, and an exploring expedition, to ascertain and report as to the mining and agricultural resources of the country, was organized and sent out by the Secretary of the Interior in 1875. The report of the geologist accompanying the expedition, made in November of that year, confirmed the existence of the precious metals on the reservation.

In the meantime, as early as June, 1875, the Secretary, under direction of the President, appointed a commission to visit the Sioux nation, with a view to secure to the citizens of the United States the right to mine in the country known as the Black Hills. Report of Commissioner of Indian Affairs for 1875, pp. 184 and 185. The commission was unsuccessful, but the government was determined, notwithstanding, to open the mineral lands to development; and by the act of August 15, 1876, 19 Stat. 176, making appropriations for the Indian service, it was provided that thereafter there should be no appropriation made for the subsistence of the Indians unless they should first agree to relinquish all right and claim to so much of their permanent reservation as lay west of the 103d meridian of longitude. This was the Black Hills country. Negotiations were resumed, and a supplementary agreement was concluded, which was approved February 28, 1877, relinquishing that portion of the reservation, and ceding it to the United States. 19 Stat. 254.

While it is true that, before the new agreement, the prohibition against settlement upon the country constituting the reservation of the Indians remained in full force, yet it was evident to all that it would soon be withdrawn by some arrangement; that immediately afterwards the mineral lands would be open to occupation and development; and that from that time mining claims taken up in the territory would be respected and protected. With the new agreement the results anticipated followed. The presence of the miners on the reservation up to that time was illegal, but from that time it was legal. Those then in possession of mining claims, which had been taken up and developed in accordance with the rules of miners in mining districts of the country, were entitled to protection in their possessory claims as against the intrusion of others. The effect of the withdrawal of the district from the reservation, and the consequent end of the prohibition, was to leave the predecessors of the plaintiff exempt from liability to be disturbed for their unlawful entry on the land, and free to take measures under the mining laws for the perfection of their claims. Evidence of what had been done by them, the

location of their claim, its extent, the amount of work done in its development, was competent, not as creating any absolute right to the property, but as showing the existence and condition of the property when their possession became lawful under the new agreement. Whether they should be protected in holding the property afterwards depended upon their future compliance with the laws, statutory and mining, governing the possession and use of mineral lands in Dakota. The rule laid down by the Supreme Court of the territory is, in our judgment, the correct one, which should govern cases of this kind, and that is substantially this : that where a party was in possession of a mining claim on the 28th of February, 1877, with the requisite discovery, with the surface boundaries sufficiently marked, with the notice of location posted, and with a disclosed vein of ore, he could, by adopting what had been done, causing a proper record to be made, and performing the amount of labor or making the improvements necessary to hold the claim, date his rights from that day ; and that such location and labor and improvements would give him the right of possession. By this rule substantial justice is done to all parties who were entitled to protection in their mining claims when the new agreement took effect.

Such proceedings were taken in this case by the owners of the Caledonia mine. They renewed their location and claim, making a record of their original claim and location and of the supplementary one, in the proper mining records of the district.

The case appears to have been examined with great care in the Supreme Court of the territory, and every consideration given to the positions of the appellants, and in its rulings we see no error.

*Judgment affirmed.*