The OGLALA SIOUX TRIBE OF the PINE RIDGE INDIAN RESERVATION, Appellant,

v.

HOMESTAKE MINING CO., et al., Appellees.

No. 82–2101.

United States Court of Appeals, Eighth Circuit.

Submitted May 16, 1983.

Decided Dec. 9, 1983.

Rehearing Denied Jan. 20, 1984.

Mario Gonzalez, Pine Ridge, S.D., Russel L. Barsh, Seattle, Wash., for appellant; Sidney Flores, Flores, Cervantes & Luna, San Jose, Cal., of counsel.

Mark V. Meierhenry, Atty. Gen., Dennis R. Holmes, Deputy Atty. Gen., Pierre, S.D., for the State of S.D. as amicus curiae; Mario Gonzalez, Pine Ridge, S.D., of counsel.

William T. Finley, Jr., William C. Lieblich, David F.B. Smith, Pierson, Semmes, Crolius & Finley, Washington, D.C., for appellees; William G. Langston, Homestake Mining Company, San Francisco, Cal., George A. Bangs, Bangs, McCullen, Butler, Foye & Simmons, Rapid City, S.D., of counsel.

Before McMILLIAN, JOHN R. GIBSON and FAGG, Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

This is another chapter in the long story of litigation concerning the Black Hills brought by the Oglala Sioux Tribe of the Pine Ridge Indian Reservation and by the Sioux Nation. The district court[1] entered summary judgment against the Oglala Sioux in this action against Homestake Mining Company and its directors. The Oglala Sioux sought to quiet title to five acres of land, to enjoin Homestake from interfering with the mine, and to recover claimed compensatory and exemplary damages for the unlawful and continuing trespass on their land for 106 years. The district court ruled that an earlier action by the Oglala Sioux against the United States and Homestake which was dismissed for lack of jurisdiction (*Oglala* I) and which was affirmed by this Court, *Oglala Sioux Tribe v. United States,* 650 F.2d 140 (8th

---

1. The Honorable Andrew W. Bogue, United States District Judge for the District of South Dakota.

Cir.1981), *cert. denied,* 455 U.S. 907, 102 S.Ct. 1252, 71 L.Ed.2d 445 (1982), compels dismissal of this action. The Oglala Sioux argue that the earlier judgment is not conclusive, and that since Homestake unlawfully entered the Oglala Sioux property, Homestake's title is void *ab initio.* The Oglala Sioux also argue that the Act of 1877 is unconstitutional and did not divest the Sioux of their interest in the Black Hills. We affirm the judgment of the district court.

The history of the litigation involving the Black Hills is set out in detail in Justice Blackmun's opinion in *United States v. Sioux Nation of Indians,* 448 U.S. 371, 100 S.Ct. 2716, 65 L.Ed.2d 844 (1980). We need not repeat that history except as it may be material for determination of the issues before us. Suffice it to say that *Sioux Nation* determined that the Act of February 28, 1877, implementing the terms of the Many Penny Commission's agreement with the Sioux leaders effected a taking of tribal property which had been set aside for the exclusive occupation of the Sioux by the Fort Laramie Treaty of 1868, and therefore, an implied obligation to make just compensation to the Sioux Nation was created. The effect of the *Sioux Nation* case was payment of more than $105,000,000 to the Sioux's account.

Eighteen days after the Supreme Court decision in *Sioux Nation* affirming the $105,000,000 award, the Oglala Sioux brought an action (*Oglala* I) against the United States and a number of individuals, municipalities and private defendants, including Homestake Mining Company. The district court[2] on September 11, 1980, dismissed the action for lack of jurisdiction. This Court affirmed the district court in *Oglala Sioux Tribe v. United States, supra,* 650 F.2d 140. Shortly thereafter this action against Homestake and its directors was commenced in the Northern District of California. The case was transferred to the United States District Court for the District of South Dakota under 28 U.S.C. § 1406(a) (1976).

In granting summary judgment the district court found it clear that the tribe seeks essentially the same relief against Homestake which it sought in *Oglala* I and that the basis for the tribe's claim against Homestake was identical to that asserted in *Oglala* I.

## I.

■ We agree with the district court that *Oglala* I, as affirmed by this Court, bars this action. The doctrine of res judicata provides that a "final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Federated Department Stores, Inc. v. Moitie,* 452 U.S. 394, 398, 101 S.Ct. 2424, 2427, 69 L.Ed.2d 103 (1981). According to the United States Supreme Court the policies advanced by the doctrine of res judicata are at their zenith in cases concerning real property, land and water. *Nevada v. United States,* —— U.S. ——, —— n. 10, 103 S.Ct. 2906, 2918 n. 10, 77 L.Ed.2d 509 (1983).

To determine the applicability of res judicata to the facts before us, we must decide first if the cause of action that the Oglala Sioux now seek to assert is the same cause of action that they asserted in *Oglala* I; we must then decide whether the parties in this proceeding are identical to or in privity with the parties in *Oglala* I. We address these questions in turn.

## A.

In *Oglala* I the Oglala Sioux brought a quiet title action in the United States District Court for the District of South Dakota. In that case the tribe sought the following relief: (1) to quiet title to seven million acres of land comprising the Black Hills; (2) to enjoin the United States from removing minerals and other resources from the land; (3) to enjoin the defendants from

---

**2.** The Honorable Albert G. Schatz, United States District Judge for the District of Nebras- ka, sitting by designation.

interfering with the tribe's use and occupation of the land; and (4) to award damages against individually named defendants, including Homestake, for trespass and waste. In this action against Homestake and its individual corporate directors, the tribe seeks (1) to quiet title to approximately five acres of land included within Homestake Mine; (2) to enjoin Homestake from interfering with the Tribe's possession and ownership of the mine, and from removing minerals therefrom; (3) an accounting for all gold and other resources taken from the mine since 1876; and (4) compensatory damages for the alleged trespass of Homestake on the Tribe's property.

It is clear from the pleadings and briefs of the Oglala Sioux that the basis for the Tribe's claim against Homestake is identical to that asserted in *Oglala* I. In both *Oglala* I and the present claim, the Oglala Sioux are essentially contesting the constitutionality of the Act of 1877 in which Congress took possession of the Black Hills. In *Oglala* I the Tribe asserted that Homestake "could not derive any title or interest from the United States . . . to any land, minerals . . . or other interests" in the Black Hills. The Tribe argued that Congress unconstitutionally exercised its eminent domain power when it took the Black Hills from the Sioux in the Act of 1877. The unconstitutional taking failed to divest the Tribe of its interest in the Black Hills and, therefore, no private party could acquire clear title to land in the Black Hills from the United States.

In this case, the Tribe contends that Manuel and Harney, the original owners of what later became Homestake Mine, located a mineral claim in the Black Hills while the land was still part of the reservation, prior to the Act of 1877. The Tribe argues that this illegal entry renders void *ab initio* any claim of Homestake to title in the land and minerals in question. The Tribe also argues that the Act of 1877 was an unconstitutional taking, which did not divest the Tribe of title to the Black Hills; therefore,

Homestake could never acquire title or a valid mineral patent to the land from the United States as a result of the 1877 taking. In their complaint in this case the Tribe asserts that "the land in question, and the minerals attached, were never ceded to the United States by the plaintiff and never became lands belonging to the United States to the date of filing this action." The Tribe argues that the Act of 1877 violated the Free Exercise Clause of the First Amendment and the public purpose limitation on the exercise of federal eminent domain in the Fifth Amendment.

A comparison of the plaintiffs' allegations in the present case with those set forth in *Oglala* I makes it clear that the essential nature of this action is no more than an elaboration upon the claims the Tribe made in *Oglala* I.

### B.

◼ Both the Oglala Sioux Tribe and Homestake were parties in *Oglala* I and are parties here.[3] Although the Oglala Sioux contend that Homestake was not a party to the decision of this Court in 1981, they do not deny that Homestake was a party to the *Oglala* I decision dismissing their claim. At the very least, therefore, the *Oglala* I decision of the district court dismissing the claim is res judicata, precluding any reassertion of the Oglala Sioux claim against Homestake. *Cf. Moitie, supra,* 452 U.S. 394, 101 S.Ct. 2424, 69 L.Ed.2d 103.

We need not rely on the res judicata effect of the district court decision, however, because our decision in *Oglala* I, 650 F.2d 140, affirmed the dismissal of the Oglala Sioux action against all defendants, including Homestake. The Oglala Sioux contend that this court did not affirm dismissal of their action against the private defendants, (one of which was Homestake) but only discussed the jurisdiction of a district court to hear the Tribe's claims against the United States and affirmed the district

---

**3.** Although the defendant directors of Homestake were not parties to *Oglala* I, they are in privity with Homestake for purposes of res judicata since they are named as defendants solely in their capacity as directors of Homestake. *See Towle v. Boeing Airplane Co.,* 364 F.2d 590, 592–93 (8th Cir.1966).

court only as to the dismissal of the case against the United States. An examination of *Oglala* I shows that this Court did affirm the dismissal of the action against all defendants, including Homestake.

In their appeal of *Oglala* I, the Oglala Sioux specifically raised the dismissal of the action against the private defendants in their statement of issues on appeal.[4] In its 1981 decision affirming the dismissal of the district court, this Court did not specifically discuss its affirmance of the district court's dismissal in relation to the private defendants. That the Court was fully aware that its decision affirmed the dismissal of the claims against the private defendants is clear, however, from the orders subsequently entered. On June 30, 1981, in connection with the Oglala Sioux petition for rehearing, this Court specifically requested the appellees to file responses to the assertion made in the petition for rehearing that the remedy provided for the Tribe in the Indian Claims Commission Act did not extinguish the Oglala Sioux claims against the private defendants. After appellees filed their respective responses, this Court entered an order on July 30, 1981, denying the Oglala Sioux's petition for rehearing and suggestions for rehearing en banc. These two orders show that this Court considered the Oglala Sioux's contention that the private defendants should not have been dismissed and found their contention to be without merit, thus denying the Oglala Sioux petition for rehearing.

■ Since the present action brought by the Oglala Sioux involves the same parties and the same claims for relief as *Oglala* I, which resulted in a final judgment that was affirmed by this Court, we conclude that the Oglala Sioux are bound by the result of *Oglala* I and are precluded by the doctrine of res judicata from relitigating their claim against Homestake.

### C.

■ The Oglala Sioux contend, however, that *Oglala* I, as affirmed by this

Court, dismissing the action for lack of jurisdiction, has no res judicata effect on their present claim against Homestake. The Tribe cites *McCarney v. Ford Motor Co.,* 657 F.2d 230, 234 (8th Cir.1981), for the proposition that: "[W]here the second suit presents new theories of relief, admittedly based upon the same operative facts as alleged in the first action, it is not precluded because the first decision was not on the merits of the substantive claim." Res judicata, however, applies to questions of jurisdiction as well as to other issues. *Underwriters National Assurance Co. v. North Carolina Life & Accident & Health Insurance Guaranty Association,* 455 U.S. 691, 102 S.Ct. 1357, 71 L.Ed.2d 558 (1982). Dismissal of a suit for lack of federal subject matter jurisdiction precludes relitigation of the same issue of subject matter jurisdiction in a second federal suit on the same claim. 18 C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 4402, at 11. Relitigation of the question of whether the first court had subject matter jurisdiction is also precluded. 18 C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure,* § 4435 at 330 n. 7. Since in the present action the Oglala Sioux are asserting identical claims and jurisdictional grounds as in *Oglala* I, this suit is barred.

■ The Oglala Sioux argue that this action presents several new theories of relief which were not made in the previous action. As is also stated by this Court in *McCarney,* dismissal based on lack of jurisdiction precludes a second action on the same claim unless "the justiciability problem can be overcome." 657 F.2d at 233. *See* 18 C. Wright, A. Miller and E. Cooper, *Federal Practice & Procedure* § 4436 at 338. None of the new theories presented correct the lack of jurisdiction problem. This Court in *Oglala* I, 650 F.2d 140, held that federal district courts lack jurisdiction over the claim because the Indian Claims Commission is the exclusive remedy for such claims. The new theories presented by

---

4. One of the issues listed in the Oglala Sioux's statement of issues on appeal stated: "VI. The District Court erred in construing Rule 19 of the Federal Rules of Civil Procedure to require dismissal of equitable claims against private persons should the United States, as their predecessor in interest, be immune from suit."

the Oglala Sioux are simply additional arguments why this Court should have reached a different result.

The Oglala Sioux argue that *Oglala* I as affirmed by this court is not res judicata to the instant suit because the present action involves claims for relief based on actions by appellees which occurred prior to the Act of 1877. According to the Oglala Sioux since the original entry of Manuel and Harney was illegal, Homestake's title to the land and minerals is void *ab initio*.

■ In *Noonan v. Caledonia Gold Mining Co.,* 121 U.S. 393, 7 S.Ct. 911, 30 L.Ed. 1061 (1887), the Supreme Court, while recognizing that the activities of miners on the reservation prior to the 1877 Act were illegal, held that the enactment of the 1877 Act validated the mining claims as of the date of enactment, February 27, 1877. According to the Supreme Court:

[W]here a party was in possession of a mining claim on the 28th of .February, 1877, ... he could, by adopting what had been done, [and] causing a proper record to be made, ... date his rights from that day; ... such ... would give him the right of possession.

*Noonan, supra,* 121 U.S. at 403, 7 S.Ct. at 916.

In this case Manuel and Harney apparently located their mining claim in April, 1876. The mining claim was relocated on March 15, 1877, by a supplemental notice of location. In the summer of 1877 the mining claim was purchased by the Hearst Associates. The Homestake Mining Company was organized on November 6, 1877, and thereafter the Hearst Associates transferred the mining claim to Homestake. Homestake Mining Company applied for a mineral patent on March 8, 1880, and the patent to the mining claim was issued to Homestake on April 30, 1881. Under the *Noonan* rule the mining claim of Manuel and Harney became valid on February 28, 1877; therefore the subsequent transfers of the mining claim were valid, and the patent obtained by Homestake is valid today.

The Oglala Sioux argue that the *Noonan* rule was reversed by the Supreme Court in *Prosser v. Finn,* 208 U.S. 67, 28 S.Ct. 225, 52 L.Ed. 392 (1908). In *Prosser* there was no alleged trespass on Indian lands. While in *Prosser* and *Noonan,* and in the present case, the original entry was prohibited, in *Noonan* and in the present case, the Act of 1877 validated the original illegal entry as of the date of the Act. There was no such validating statute in *Prosser;* the plaintiff's illegal entry never became valid. The *Prosser* decision did not overrule *Noonan.* The rule in *Noonan* simply did not apply to *Prosser.*

Since the Act of 1877 validated Manuel and Harney's original illegal entry, the Oglala Sioux's "new" theory of relief based on the pre-1877 Act claims could succeed only if the 1877 Act is unconstitutional. The Oglala contend that it is unconstitutional; however, relitigation of the constitutionality of the Act of 1877 is precluded by the earlier decision of this Court in *Oglala* I, 650 F.2d 140.

■ The Oglala Sioux also assert claims for relief under the Indian Trade and Intercourse Act of 1834 and 28 U.S.C. § 2415 (1982). Neither of these statutes provide the necessary subject matter jurisdiction as neither of them constitute a waiver of the sovereign immunity of the United States.[5] Section 12 of the Indian Trade and Intercourse Act, now codified at 25 U.S.C. § 177 (1983), prohibits transfers of Indian land without federal consent; and Section 11, now codified at 25 U.S.C. § 180 (1983), establishes a penalty for unauthorized settlement on Indian lands. It is clear that neither of these sections is applicable to this case unless the Act of 1877 extinguishing the Sioux interest in the Black Hills is unconstitutional. The Oglala Sioux continue to maintain that the Act of 1877 is unconstitutional, but that is not a "new" theory.

28 U.S.C. § 2415 is simply a statute of limitations; it provides no new theory of

---

5. The Oglala Sioux also argue that the Indian Claims Commission is not the exclusive remedy for their claims against Homestake, and that

the United States is not an indispensable party. The decision in *Oglala* I precludes relitigation of these issues by the Oglala Sioux.

relief under which the Oglala Sioux could establish jurisdiction. Since none of the new theories asserted by the Oglala Sioux changes the nature of their cause of action, the present action is precluded by the court's decision in *Oglala* I.

## II.

The Oglala Sioux also appeal the district court's denial of their motions for partial summary judgment. In the district court the Oglala Sioux's motions for partial summary judgment sought penalties and damages resulting from the allegedly illegal entry onto what is now the Homestake Mine by Manuel and Harney prior to the Act of 1877.

For the same reasons stated above, we affirm the district court's denial of the motions for summary judgment. In *Oglala* I, 650 F.2d 140, we affirmed the decision of the trial court holding that the district court lacked jurisdiction over the claims because the Indian Claims Commission had exclusive jurisdiction. As we have stated, the claims asserted in that case and this one are essentially identical. Therefore consideration of the claims on which the Oglala Sioux urge us to grant partial summary judgment is barred by res judicata.

## III.

As previously pointed out, the Oglala Sioux's claims against Homestake are essentially based on the theory that the Act of 1877 did not divest the Sioux of their right to the Black Hills. Under the doctrine of collateral estoppel, the 1974 Indian Claims Commission decision, *Sioux Nation v. United States,* 33 Ind.Cl.Comm. 151 (1974), as affirmed by the Court of Claims, 601 F.2d 1157, 220 Ct.Cl. 442 (1979), and the Supreme Court, 448 U.S. 371, 100 S.Ct. 2716, 65 L.Ed.2d 844 (1980), bars the Oglala Sioux from relitigating whether the Act of 1877 extinguished their right to the Black

Hills. As this court has stated, collateral estoppel is appropriate where:

 1. the issue was identical to one in a prior adjudication;

 2. there was a final judgment on the merits;

 3. the estopped party was a party or in privity with a party to the prior adjudication; and

 4. the estopped party was given a full and fair opportunity to be heard on the adjudicated issue.

*Oldham v. Pritchett,* 599 F.2d 274, 279 (8th Cir.1979) (*quoting Gerrard v. Larsen,* 517 F.2d 1127, 1130 (8th Cir.1975).

Only the third element as set forth above is at issue in this case. The Oglala Sioux argue that they were not a party to the Indian Claims Commission proceedings. However, in *Sioux Nation v. United States, supra,* 33 Ind.Cl.Comm. at 243, the Indian Claims Commission specifically found that the "Sioux Tribe of the Pine Ridge Indian Reservation" was a party to that action.

Under the Federal Rules of Civil Procedure a party's ability to withdraw or be dismissed without leave of court is limited. A party may dismiss without obtaining consent of the court (1) by stipulation of all the parties at any time, or (2) by his unilateral act in filing a notice of dismissal with the court prior to service of an answer or of a motion for summary judgment. Fed.R. Civ.P. 41(a)(1). *See Armstrong v. Frostie Co.,* 453 F.2d 914, 916 (4th Cir.1971). The only other way for a party to gain voluntary dismissal is by order of court. Fed.R. Civ.P. 41(a)(2).

It is not contended by the Oglala Sioux that they followed either of the methods provided by the Federal Rules to obtain voluntary dismissal without leave of court.[6] The Oglala Sioux do not demonstrate that they gave notice of their intention not to be

---

**6.** First the Oglala Sioux argue that the non-renewal of their attorney's contract, which expired in 1977, constituted their withdrawal from the Indian Claims Commission proceedings. Secondly, the Oglala Sioux contend that they were no longer a party to the case when it was resubmitted to the Court of Claims be-

cause of their decision, by action of their tribal council on April 21, 1978, to pursue their constitutional remedies to recover land rather than money compensation against the United States. Neither of their arguments is persuasive. Such unilateral action alone does not constitute an effective withdrawal.

a party to the 1979 decision of the Court of Claims until they filed a quiet title action in the Federal District Court of South Dakota eighteen days after the United States Supreme Court had affirmed the judgment of the Court of Claims awarding over $100,-000,000 to the Sioux Nation. *United States v. Sioux Nation, supra,* 448 U.S. 371, 100 S.Ct. 2716, 65 L.Ed.2d 844.

Since the Oglala Sioux were a party to the proceedings as begun in the Indian Claims Commission, and never formally sought withdrawal or voluntary dismissal as provided by the Federal Rules of Civil Procedure, they remained a party throughout the course of the *Sioux Nation* litigation and, therefore, are bound by the decision of the Indian Claims Commission as affirmed by the Court of Claims and the United States Supreme Court.

 Even if the Oglala Sioux had obtained an order dismissing them from the Commission proceedings, litigation of the Act of 1877's constitutionality would be collaterally estopped by the final judgment in the Commission proceedings because the Oglala Sioux are in privity with the Sioux Nation.[7] As privies of the Sioux Nation, the Oglala Sioux are bound by the decision of the Indian Claims Commission that the Act of 1877 was a valid taking, *Sioux Nation v. United States, supra,* 33 Ind.Cl. Comm. 151; consequently, they are precluded from raising the unconstitutionality or validity of the Act as an issue in this litigation.

### IV.

 The Oglala Sioux argue for the first time on appeal that Honorable Andrew W. Bogue, the presiding judge at the trial of this action, should have recused himself under 28 U.S.C. §§ 455(a) and 455(b)(4) (1983) because he owns real property in the Black Hills. The Oglala Sioux's suggestion that Judge Bogue should have recused himself is both legally insufficient and untimely.

Section 455(a) provides that a judge shall disqualify himself "in any proceeding in which his impartiality might reasonably be questioned," and under § 455(b)(4) he should disqualify himself when he has "a financial interest in the subject matter in controversy . . . ." Although Judge Bogue does own some land in the Black Hills area, he does not own any of the land that is at issue in this suit. Ownership of land within the Black Hills area does not qualify as a financial interest in the subject matter in controversy where the disposition of the Oglala Sioux's claim to the land would not affect Judge Bogue's title in any way. *See Chitimacha Tribe of Louisiana v. Harry L. Laws Co., Inc.,* 690 F.2d 1157 (5th Cir.1983).

Other than pointing out that Judge Bogue recused himself in *Oglala I,* the appellants present no reason to question Judge Bogue's impartiality. The fact that Judge Bogue disqualified himself in *Oglala I* is not evidence that suggests his impartiality would be impaired in this litigation. In *Oglala I,* the Oglala Sioux were seeking to recover land in the Black Hills area which included land owned by Judge Bogue. That is not the case here where the land in issue is limited to the Homestake Mine, in which Judge Bogue owns no interest.

The Oglala Sioux's suggestion that Judge Bogue disqualify himself should have been raised in the trial court. *See Delesdernier v. Porterie,* 666 F.2d 116, 121 (5th Cir.1982). Although § 455 does not include an explicit time limitation, we believe that a timeliness requirement is appropriate, especially in this case where the Oglala Sioux were aware of the alleged grounds for disqualification at the time the case was assigned to Judge Bogue, but the suggestion for disqualification was not raised until this appeal.

After carefully reviewing all of the appellants' allegations of error and considering the various arguments in which they claim the district court has subject matter jurisdiction to hear the merits of their

---

**7.** A person is in "functional privity" with a party and is thus collaterally estopped where he has participated in the prior fair and ade-quate litigation of the issue sought to be relitigated. *Gerrard v. Larson, supra,* 517 F.2d 1127 at 1134–35.

claims against Homestake Mining Company, we conclude that they are without merit. Therefore the district court's grant of summary judgment for the defendant Homestake Mining Company is affirmed.