# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| NANCY HAMMER, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | C.A. No. K20A-11-002 NEP |
| v. | ) | |
| | ) | |
| WILLIAM HOWARD, SR., | ) | |
| CYNDI HOWARD MCCOY, | ) | |
| and HOWARD INDUSTRIES, INC., | ) | |
| | ) | |
| Appellees. | ) | |

Submitted:  July 8, 2021
Decided:  October 22, 2021

## MEMORANDUM OPINION AND ORDER

*Upon Appellant's Appeal of the Decision on Motion to Dismiss of the Court of Common Pleas*

### AFFIRMED

Nancy Hammer, Appellant, *pro se.*

R. Eric Hacker, Esquire, Morris James LLP, Wilmington, Delaware, *Attorney for Appellees.*

Primos, J.

Before the Court is an appeal from the decision of the Court of Common Pleas (hereinafter the "CCP") brought by Plaintiff-below/Appellant Nancy Hammer (hereinafter "Plaintiff"). On November 16, 2020, Plaintiff filed an appeal of the CCP's determination (hereinafter the "CCP's Order") to grant the Motion to Dismiss of Defendants-below/Appellees William Howard, Sr., Cyndi Howard McCoy, and Howard Industries, Inc. (hereinafter collectively "Defendants"). The CCP's Order dismissed Plaintiff's case with prejudice based upon *res judicata* and the statute of limitations. This Court, while disagreeing with some of the CCP's legal analysis, **AFFIRMS** the CCP's Order for the reasons that follow.

### FACTUAL AND PROCEDURAL BACKGROUND

On May 8, 2015, Plaintiff filed a breach of contract claim in this Court (hereinafter "*Hammer I*") against Howard Medical, Inc., and Howard Industries, Inc., for commission payments allegedly owed to Plaintiff for work performed prior to her termination. In *Hammer I*, Plaintiff contended that she entered into both an oral "implied" agreement on June 10, 2010, and a written agreement on August 18, 2010, to sell medical equipment with those defendants, pursuant to which she would earn a commission on each sale.[1] Plaintiff alleged that she was to earn a 10% commission for sales to customers she had "secured" during her employment.[2] In *Hammer I*, Plaintiff failed to respond appropriately to interrogatories, notwithstanding this Court's repeated instructions and orders to her to do so.[3] On April 26, 2017, after the defendants filed a motion to dismiss based on the aforementioned discovery violations, this Court granted the motion in an order, dismissing Plaintiff's case with prejudice.[4]

---

[1] *Hammer I*, Compl. ¶¶7-8.
[2] *Hammer I*, Compl. ¶11.
[3] *Hammer v. Howard ("Hammer II")*, 2020 WL 6083725, at *1 (Del. Com. Pl. Oct. 15, 2020).
[4] *See* R. at APPX260-264 ("This dispute about the Interrogatories and her failure to comply has been going on for nearly a year. It is clear that Hammer has been using her objections and non-

On December 20, 2019, Plaintiff filed a new claim in the CCP against Defendants for debt allegedly resulting from Defendants' failure to pay commissions for purchase orders from customers Plaintiff had acquired prior to her termination but who had made purchases post-termination. In her complaint, Plaintiff asserted that these commissions became payable in 2014 and 2015 after her customers completed purchases, and that Plaintiff did not receive documentation from Defendants regarding the commissions until December 22, 2016, and April 27, 2017.[5]

On January 27, 2020, Defendants filed a Motion to Dismiss with the CCP, arguing that the complaint should be dismissed on two separate grounds, *i.e*, res *judicata* and the applicable statute of limitations. Thereafter, Plaintiff filed this appeal.

## STANDARD OF REVIEW

On appeal from the CCP to this Court, "the standard of review is whether there is legal error, whether the trial court's factual findings are sufficiently supported by the record, and whether those findings are the product of an orderly and logical reasoning process."[6] First, questions of law are reviewed *de novo*.[7] Second, this Court has analogized review of the CCP's findings of fact to a substantial evidence standard.[8] Therefore, this Court's role "is to correct errors of law and to review the

---

compliance as a tactic to delay the progress of this case. . . . After consideration of the six *Drejka* factors, the Court is convinced that the only appropriate sanction for Hammer [sic] repeated and willful failure to respond to Howard's First Set of Interrogatories is dismissal of her case with prejudice."). The referenced appendix ("APPX") is the Appendix to Defendants' Motion to Dismiss, which is part of the record from the CCP filed in this Court.

[5] CCP Compl. ¶¶8-9.

[6] *Hicklin v. Onyx Acceptance Corp.*, 970 A.2d 244, 248 (Del. 2009).

[7] *Massey v. Nationwide Assurance Co.,* 2018 WL 4692488, at *2 (Del. Super. Sept. 28, 2018) (citing *Robert J. Smith Companies, Inc. v. Thomas*, 2001 WL 1729143, at *2 (Del. Super. Dec. 10, 2001)).

[8] *See, e.g., May v. Hillcap I, LLC*, 2020 WL 4932331, at *3 (Del. Super. Aug. 21, 2020) ("The Court will not disturb a CCP decision without finding an error of law or lack of substantial

factual findings of the court below to determine if they are sufficiently supported by the record and are the product of an orderly and logical deductive process."[9]

The CCP's Order granted Defendant's motion to dismiss for failure to state a claim pursuant to Court of Common Pleas Civil Rule 12(b)(6). On such a motion, the moving party bears the burden of demonstrating that "under no set of facts which could be proven in support of [the complaint] would the [plaintiff] be entitled to relief."[10] Upon a trial court's review of a motion to dismiss, "(i) all well-pleaded factual allegations are accepted as true; (ii) even vague allegations are well-pleaded if they give the opposing party notice of the claim; (iii) the [c]ourt must draw all reasonable inferences in favor of the non-moving party; and [(iv)] dismissal is inappropriate unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof."[11] A trial court may properly decide a motion to dismiss by considering documents referenced in the complaint and may take judicial notice of "matters that are not subject to reasonable dispute."[12]

## DISCUSSION

On appeal, Plaintiff has raised several issues regarding decisions of the CCP rendered prior to the CCP's Order.[13] As to Plaintiff's two motions for default

---

evidence as support from the record below."); *Thomas*, 2001 WL 1729143, at *2 ("In addressing appeals from a trial court, this Court is limited to correcting errors of law and determining whether substantial evidence exists to support factual findings.").

[9] *Uribe v. Md. Auto. Ins. Fund,* 2014 WL 4942340, at *2 (Del. Super. Sept. 30, 2014), *aff'd*, 115 A.3d 1216 (Del. 2015) (internal quotations and citations omitted).

[10] *Dufresne v. Camden-Wyoming Fire Co. Inc.*, 2020 WL 2125797, at *2 (Del. Super. May 5, 2020) (internal quotations omitted) (alterations in original).

[11] *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 897 (Del. 2002) (citing *Kofron v. Amoco Chems. Corp.*, 441 A.2d 226, 227 (Del. 1982)).

[12] *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 169 (Del. 2006) (citation omitted).

[13] These include the CCP's 1) denial of Plaintiff's motions for default judgment on two separate occasions, 2) refusal to strike Defendants' letter objecting to Plaintiff's first motion for default judgment, and (3) refusal to strike Defendants' motion to dismiss. *See* Plaintiff's Opening Brief at 6-7.

judgment prior to the CCP's Order, the CCP noted in both instances that "the sanction for filing a pleading late is not dismissal."[14] This Court finds no legal error or abuse of discretion in the CCP's denial of default judgment or any of its other discretionary decisions rendered prior to the CCP's Order.

As to the CCP's Order, Plaintiff argues in her reply brief that there were both legal and factual errors made by the CCP in analyzing the issues of *res judicata* and the statute of limitations.[15]

### 1. *Res Judicata*

The doctrine of *res judicata* precludes efforts to litigate the same cause of action more than once.[16] In Delaware, a dismissal with prejudice is considered an adjudication on the merits.[17] When an action has been dismissed on the merits, the *res judicata* doctrine "forecloses a losing party from reasserting for a second time the same cause of action against the same party."[18]

In her appeal, Plaintiff does not dispute that the original dismissal was on the merits, but instead contends that the application of res *judicata* to her claims was improper. Under Delaware law, a party claiming that the doctrine of *res judicata* bars a subsequent action must demonstrate the presence of five elements: "(1) the court making the prior adjudication had jurisdiction, (2) the parties in the

---

[14] *Hammer II*, 2020 WL 6083725, at *3. Additionally, Defendants argued that Plaintiff did not follow the proper procedure for seeking a default judgment because she did not file an affidavit pursuant to Court of Common Pleas Civil Rule 55(b)(1).

[15] The Court notes Defendants' position that the Court should not consider any of the Plaintiff's arguments not raised in her opening brief. However, Defendants argued in their answering brief why these legal issues, specifically *res judicata* and the statute of limitations, were correctly decided. Therefore, the Court will take into consideration Plaintiff's response, but finds that Plaintiff has waived any additional arguments in her reply brief not stemming from these two issues by failing to assert them in her opening brief.

[16] *Kaufman v. Nisky*, 2011 WL 7062500, at *1 (Del. Super. Dec. 20, 2011) (citing *Ezzes v. Ackerman, 234* A.2d 444, 446 (Del. 1967)).

[17] *Id.* (citing *Savage v. Himes*, 2010 WL 2006573, at *3 (Del. Super. May 18, 2010)).

[18] *Id.* (citing *Savage*, 2010 WL 2006573, at *3).

present action are either the same parties or in privity with the parties from the prior adjudication, (3) the cause of action must be the same in both cases or the issues decided in the prior action must be the same as those raised in the present case, (4) the issues in the prior action must be decided adversely to the plaintiff's contentions in the instant case, and (5) the prior adjudication must be final."[19]

Plaintiff has not argued on appeal that the CCP erred in its determination of factors 1, 4, and 5. Therefore, the Court will consider only factors 2 and 3.

### a. Factor 2—Privity

Plaintiff claims that the two suits she filed had different defendants. While this is true on its face—in the instant suit both William Howard, Sr., and Cyndi Howard McCoy (hereinafter "Mr. Howard and Ms. McCoy") were added—the *res judicata* doctrine, as noted *supra*, applies not only to the same parties but to those in "privity with the parties from the prior adjudication."[20] Privity "does not require a direct contractual relationship,"[21] but rather is a "legal determination" made by the trial court "with regard to whether the relationship between the parties is sufficiently close to support preclusion."[22] Parties are in privity when "their interests are identical or closely aligned such that they were actively and adequately represented in the first suit."[23] In general, "[a] director's close relationship with the corporation will . . . establish privity."[24]

---

[19] *Bailey v. City of Wilmington*, 766 A.2d 477, 481 (Del. 2001).

[20] *Id.*

[21] *Aveta Inc. v. Cavallieri,* 23 A.3d 157, 180 (Del. Ch. 2010).

[22] *Higgins v. Walls,* 901 A.2d 122, 138 (Del. Super. 2005) (quoting James Wm. Moore *et al.*, Moore's Federal Practice § 132.04[1][b] (3d. ed. 2004)).

[23] *Aveta*, 23 A.3d at 180.

[24] *Lowell Staats Min. Co. v. Phila. Elec. Co.*, 878 F.2d 1271, 1277 (10th Cir. 1989) (citing *Oglala Sioux Tribe of Pine Ridge Indian Rsrv. v. Homestake Min. Co.,* 722 F.2d 1407, 1410 (8th Cir. 1983)); *see also Pedrina v. Chun,* 97 F.3d 1296, 1302 (9th Cir. 1996) (finding corporate officers named in RICO action were in privity with corporation that was party to earlier action because the

Here, the CCP concluded that the two actions involved the same parties and their privies. However, in making that determination, the CCP appears to have relied on the fact that Plaintiff "affiliates" the added parties—Mr. Howard and Ms. McCoy—with Howard Industries, Inc.[25] Plaintiff's subjective viewpoint of the affiliation between the parties, however, is not determinative. The correct inquiry is to examine the added parties' interests as stated in the complaint and to determine if they are "identical or closely aligned such that they are actively and adequately represented in the first suit."[26]

Plaintiff's CCP complaint reflects that Mr. Howard and Ms. McCoy are corporate officers of Howard Industries Inc.[27] The complaint also alleges that Mr. Howard and Ms. McCoy made key decisions in the company, directly involving Plaintiff's conditions of employment.[28]

Here, as corporate officers, with at least some control over both hiring and firing decisions and those concerning compensation—specifically involving Plaintiff—Mr. Howard's and Ms. McCoy's interests were identical or closely aligned with those of the defendants in *Hammer I*, and their interests were adequately represented in that suit.

### b. Factor 3—Same Transaction

Delaware follows a transactional approach to *res judicata*.[29] In determining whether two claims arise under the same transaction, the fact finder looks at "whether the facts are related in time, space, origin, or motivation, whether they form

---

officers stood accused of participating in the same wrongdoing, committed in their official capacities, of which the corporation stood accused in the earlier action).

[25] *Hammer II*, 2020 WL 6083725, at *5.

[26] *Aveta*, 23 A.3d at 180.

[27] CCP Compl. ¶¶2-3.

[28] *See id.* ¶¶4-5.

[29] *LaPoint v. AmerisourceBergen Corp.*, 970 A.2d 185, 193 (Del. 2009) (citations omitted).

a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage."[30] "Two claims derive[d] from a common nucleus of operative fact[s] arise from the same transaction. . . . [T]o assert *res judicata* as a bar to a plaintiff's claim, in addition to showing that the same transaction formed the basis for both the present and former suits, the defendant must show that the plaintiff neglected or failed to assert claims which in fairness should have been asserted in the first action."[31]

The CCP ultimately determined that the claims in *Hammer I* and those in the instant case arose from the same transaction. Although this Court agrees with the CCP's conclusion, the Court feels it important to explain the legal reasoning behind that conclusion, given that the CCP did not address the issue of Plaintiff's ability to sue for future commission claims during *Hammer I*.[32]

The pleadings reflect that Plaintiff was fired on May 8, 2013.[33] The CCP effectively took judicial notice of a letter dated February 20, 2014,[34] attached as an exhibit in Plaintiff's motion practice in *Hammer I*[35] and provided by Plaintiff to the CCP during oral argument on Defendants' Motion to Dismiss.[36] The letter was sent

---

[30] *Id.* (internal quotations omitted).

[31] *Id.* (internal quotations omitted) (first and second alteration in original).

[32] Plaintiff has argued below and to this Court that the transactions had not consummated until after her termination, and therefore that she was not aware a breach had occurred until 2016 and 2017. Additionally, Plaintiff attempts to distinguish the two sets of claims from each other because they are separate in time.

[33] CCP Compl. ¶4.

[34] *Hammer II*, 2020 WL 6083725, at *1 (stating contents of the letter in the factual and procedural history portion of the CCP's Order).

[35] R. at APPX333 (attached as an exhibit to Plaintiff's Motion from Relief from Order dated May 8, 2017).

[36] CCP Civil Worksheet (Aug. 14, 2020) (listing "Feb. 20, 2014 Letter from Richard Yoder" under "Plaintiff(s) [sic] Exhibits"). Neither party disputes the authenticity of the letter. *See* Pl.'s Response to Defs.' Mt. Dismiss ¶19 (claiming that on "February 20, 2014, Defendants [sic] Counsel, Richard Yoder wrote to Plaintiff . . . ."). Hence, the letter's existence is "not subject to reasonable dispute." *See Gen. Motors,* 897 A.2d at 169 ("The trial court may also take judicial

8

to Plaintiff by Richard Yoder, attorney for Howard Industries, Inc., and  stated, "[H]oward has denied and continues to deny that it owes [Plaintiff] a commission on firm orders accepted after June 10, 2013 . . . . No further payments will be made by Howard regarding this matter."[37]   At this point, Plaintiff had notice of Defendants' alleged breach of any oral or written contractual commission agreements.

Ordinarily, this letter, and the statement within it, would be considered an anticipatory repudiation.[38] "In the case of an anticipatory repudiation the non-breaching party is entitled to a choice of several different types of remedy, including waiting until performance is due to pursue its claims."[39]  However, "significant authority supports the conclusion that a repudiation coupled with simultaneous non-performance gives rise to an action for total breach . . . under the contract."[40]   In

---

notice of matters that are not subject to reasonable dispute.") (citation omitted).  Moreover, the letter was part of the record in *Hammer I*, and Plaintiff herself had placed the letter into that record, and it was therefore proper for the CCP to take judicial notice of the letter for purposes of deciding a Rule 12(b)(6) motion to dismiss. *See Fortis Advisors LLC v. Shire US Holdings, Inc,* 2020 WL 748660, at *1 n.3 (Del. Ch. Feb. 13, 2020) (stating, in deciding a Rule 12(b)(6) motion to dismiss based on *res judicata*, "[w]hile I have drawn the facts from the well-pled allegations in the Complaint, I have also taken judicial notice of the court record that gave rise to the 2017 Decision"); *see also Frank v. Wilson*, 32 A.2d 277, 280 (Del. 1943) (taking judicial notice of court record in companion litigation when addressing a motion to dismiss); *Orloff v. Shulman*, 2005 WL 3272355, at *12 (Del. Ch. Nov. 23, 2005) (taking judicial notice of the "record of the bankruptcy court's approval" of a lease assignment).

[37] R. at APPX333.

[38] 23 *Williston on Contracts* § 63:28 (4th ed.) (defining an anticipatory breach as "a repudiation of the obligations of a contract by a party to it before the time has come for performance on his or her part").

[39] *BioVeris Corp. v. Meso Scale Diagnostics, LLC*, 2017 WL 5035530, at *8 (Del. Ch. Nov. 2, 2017), *aff'd,* 202 A.3d 509 (Del. 2019) (TABLE) (citing 23 *Williston on Contracts* § 63:33 (4th ed.)).

[40] *Id.*

other words, "the non-performance plus the repudiation constitute one and only one cause of action."[41]

Here, Plaintiff has acknowledged that she received the February 2014 letter, and therefore she was put on notice of Defendants' position regarding any future commission payments. She subsequently sued in *Hammer I* for commissions she deemed she was owed, alleging non-performance of written or oral agreements. Consequently, the February 2014 letter, paired with the missed payments as originally alleged in *Hammer I*, encompassed a total breach and formed "one cause of action."

Plaintiff was in the proper position to sue for her right to all current and future claims for commission payments during *Hammer I*.[42] Now Plaintiff is attempting to get a second bite at the apple. Both claims arise from the same "nucleus of operative fact," including the employment arrangement and accompanying contractual agreements regarding earned commissions. Once the Court in *Hammer I* dismissed Plaintiff's claims, including breach of contract claims, with prejudice, her rights to pursue future claims under the same operative contracts were extinguished, as they

---

[41] *Id.* at *9 (internal quotation marks omitted) (quoting 9 Arthur Linton Corbin *Corbin on Contracts* § 954 (interim ed. 2002)) (citations omitted); 10 John E. Murray, Jr. *Corbin on Contracts* § 53.12 (Joseph M. Perillo, ed., rev. ed. 2014) (citations omitted)); *see also id.* (internal quotations marks omitted) (quoting 31 *Williston on Contracts* § 79:19 (4th ed.)) ("In the case of a strictly anticipatory breach, it is true, there is often at least a theoretical possibility that the repudiator can and will effectively withdraw the repudiation so that the contract can be performed, but after a material present breach, any attempt to withdrawal by the wrongdoer would be ineffectual. . . .The idea that the injured party may elect not to call a breach something that is a breach . . . is not logically defensible, whatever authorities may be cited in its favor.").

[42] The mere fact that Plaintiff was not aware of the specific future commissions she alleged she was owed until a later time does not negate her ability and obligation to sue for the total breach of the alleged agreements in *Hammer I*.

10

were part of the same transaction.[43]  Therefore, the CCP properly determined that Plaintiff's claims in that Court were barred by the principle of *res judicata*.

### 2. Statute of Limitations

As noted *supra*, *res judicata* provided an adequate ground for dismissal of Plaintiff's claims in the CCP.  Accordingly, this Court need not, and will not, reach the merits of the CCP's determination that Plaintiff's claims are also barred by the applicable statute of limitations.

### CONCLUSION

**WHEREFORE**, for the foregoing reasons, the CCP's Order is **AFFIRMED** .

**IT IS SO ORDERED.**

/s/Noel Eason Primos
Judge

NEP/wjs
*Via File & ServeXpress*
Oc:   Prothonotary
        Nancy Hammer, *pro se*
        Counsel of Record

---

[43] *See Kaufman*, 2011 WL 7062500, at *1 (citing *Savage*, 2010 WL 2006573, at *3) ("In Delaware, a dismissal with prejudice is considered an adjudication on the merits.").